[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 574 
The construction of the covenant of the defendant, the Second Avenue Railroad Company, contained in *Page 576 
the instrument of December 15, 1852, to pave the streets "in and about the rails" in a permanent manner, and to "keep the same in repair to the satisfaction of the street commissioners," was considered in the case of McMahon v. Second Ave. R.R. Co. (75 N.Y. 231), and it was held that the covenant bound the company to pave and keep in repair so much of the space between the tracks as was disturbed in the original construction of the road. Upon this construction of the covenant, the defendant was bound to keep in repair the whole space between the tracks of its road on Second avenue, between Houston and Forty-second streets, as it was shown that while the laying of the road originally would only require the actual displacement of the pavement for a distance of about eighteen inches on the side of each rail, nevertheless it would so disturb the belt of intermediate pavement as to require it to be relaid. The trial judge, therefore, correctly ruled that the covenant extended to the entire space between the tracks. It is insisted, however, that conceding this to be the true construction of the covenant, the court erred in directing a verdict for the sum expended by the city, and for the value of the new materials used, as proved by the account kept by the city. The objection is two-fold: First, that the rule of damages for a breach of a covenant to repair, where the covenantor has neglected to perform his covenant, and the repairs have been made by the covenantee, is the reasonable cost of the repairs, and not the sum expended by the covenantee in making them, and that the question of reasonable expense should, under the evidence, have been submitted to the jury; and, second,
that improper evidence was admitted to prove the amount of labor and materials used in the work. In reference to the first objection, it was shown on the part of the city, without contradiction, that the street was out of repair, and that the defendant having neglected, after due notice, to put it in repair as required by its covenant, the city proceeded to make the repairs at a cost for labor and materials of $1,971.72. It employed laborers at the usual wages paid by the city and purchased materials for the work in the usual way. It does not affirmatively appear *Page 577 
that the labor and materials employed did not exceed the necessary amount. But the work appears to have been done in the usual manner and by the agencies usually employed by the city in the prosecution of street repairs. We think the learned counsel for the defendant is correct in the proposition that the measure of damages for the breach of the defendant's covenant was the reasonable cost of the work. The city could not proceed in a reckless or extravagant manner and charge the defendant for expenses unnecessarily or unreasonably incurred. (State v.Ingram, 5 Ired. [N.C.] 441; Rutland v. Dayton, 60 Ill. 58.) But where a covenantee has made repairs which the covenantor was bound, but has neglected to make, and has proceeded in the usual way and no fraud is shown, nor any facts to impeach the reasonableness of the account, the sum actually expended in the work, is, we think, prima facie the sum which he is entitled to recover. In the absence of proof neither fraud, recklessness nor extravagance will be presumed, and this measure of recovery presumptively gives the covenantor actual indemnity only. But it is insisted that the facts proved on the part of the defendant tended to show that the cost of the repairs exceeded a reasonable sum, and that the question, therefore, should have been submitted to the jury. We think there was no question for the jury upon this point. The defendant proved by its track-master that the cost to the company of paving with cobble stone was, in respect to the item of labor, much less per square yard than the sum paid by the city for laying the pavement in question. But the pavement laid was Belgian pavement, and it was proved on the part of the city, and the proof was uncontradicted, that the laying of Belgian pavement involved much more labor and expense than paving with cobble stones. There was no evidence showing that the charge for labor in the account of the city was excessive, or that more laborers or materials were provided than were reasonably required. We are of opinion, therefore, that the direction of the verdict for the sum actually expended by the city, in making the repairs, was not error. *Page 578 
A more serious question is raised by exceptions to the admission in evidence of a time-book kept by one John B. Wilt, and of a written memorandum or account made by him, offered to prove the number of days' work performed and the quantity of material used. Wilt was a foreman, in the employ of the department of public works, and had general charge of the repairs in question. Under him were two gang foremen, or head pavers, Patrick Madden and Charles Coughlan, each having charge of a separate gang of about ten men employed on the work. Wilt kept a time-book, in which was entered the name of each man employed. He visited the work twice a day, in the morning and afternoon, remaining from a few minutes to half an hour each time, and he testified that while there he checked on the time-book the time of each man, as reported to him by the gang foremen. He also testified that he marked the men's names as he saw them, and that he knew their faces. The gang foremen did not see the entries made by Wilt, but they testified that they correctly reported to him each day the names of the men who worked, and if any did not work full time, they reported that fact also. Upon this proof, the trial judge admitted the time-book in evidence, against the objection of the defendant. The trial judge also admitted in evidence, under like objection, a written memorandum or account, in the handwriting of Wilt, of materials used. Wilt testified that the entries in the account were made from daily information furnished by the gang foremen, on the occasions of his visiting the work, and that he correctly entered the amounts as reported. It does not appear that he had any personal knowledge of the matters to which the entries related. The gang foremen were called as witnesses in support of the account. Neither of them saw the entries, and on the trial neither claimed to have any present recollection of the specific quantities so reported by them. Madden testified that he reported the correct amounts to Wilt, and it is inferable from his evidence that when the reports were made, he had personal knowledge of the facts reported. Coughlan also testified in general terms that he reported the items correctly. But on further examination it *Page 579 
appeared that his reports to Wilt of the stone delivered at the work, were made upon information derived by him from the carmen who drew the stone, and who counted them, and who reported the count to Coughlan, who in turn reported to Wilt. Coughlan saw the carmen dump the stone, but he did not verify the count, but appears to have assumed its correctness. The carmen who delivered the stone were not called as witnesses.
The exception to the admission of the time-book presents a question of considerable practical importance. The ultimate fact sought to be proved on this branch of the case, was the number of days' labor performed in making the repairs. The time-book was not admissible as a memorandum of facts known to Wilt and verified by him. His observation of the men at work was casual, and it cannot be inferred that he had personal knowledge of the amount of labor performed. His knowledge, from personal observation, was manifestly incomplete, and the time-book was made up, mainly, at least, from the reports of the gang foremen. The time-book was clearly not admissible upon the testimony either of the gang foremen, or of Wilt, separately considered. The gang foremen knew the facts they reported to Wilt, to be true, but they did not see the entries made, and could not verify their correctness. Wilt did not make the entries upon his own knowledge of the facts, but from the reports of the gang foremen. Standing upon his testimony alone, the entries were mere hearsay. But combining the testimony of Wilt and the gang foremen, there was, first, original evidence that laborers were employed, and that their time was correctly reported by persons who had personal knowledge of the facts, and that their reports were made in the ordinary course of business, and in accordance with the duty of the persons making them, and in point of time were contemporaneous with the transactions, to which the reports related, and second, evidence by the person who received the reports, that he correctly entered them as reported, in the time-book, in the usual course of his business and duty. It is objected that this evidence taken together, is incompetent to prove the ultimate fact, and amounts to nothing more than hearsay. If the witnesses *Page 580 
are believed, there can be but little moral doubt that the book is a true record of the actual fact. There could be no doubt whatever, except one arising from infirmity of memory, or mistake, or fraud. The gang foremen may by mistake or fraud, have misreported to Wilt, and Wilt may either intentionally or unintentionally have made entries not in accordance with the reports of the gang foremen. But the possibility of mistake or fraud on the part of witnesses, exists in all cases and in respect to any kind of oral evidence. The question arises, must a material, ultimate fact be proved by the evidence of a witness who knew the fact and can recall it, or who, having on personal recollection of the fact at the time of his examination as a witness, testifies that he made, or saw made an entry of the fact at the time, or recently thereafter, which on being produced, he can verify as the entry he made or saw, and that he knew the entry to be true when made, or may such ultimate fact be proved by showing by a witness that he knew the facts in relation to the matter which is the subject of investigation, and communicated them to another at the time, but had forgotten them, and supplementing this testimony by that of the person receiving the communication to the effect that he entered at the time, the facts communicated and by the production of the book or memorandum in which the entries were made. The admissibility of memoranda of the first class is well settled. They are admitted in connection with, and as auxiliary to the oral evidence of the witness, and this whether the witness, on seeing the entries, recalls the facts, or can only verify the entries as a true record made or seen by him at, or soon after the transaction to which it relates. (Halsey v. Sinsebaugh, 15 N.Y. 485; Guy
v. Mead, 22 id. 462.)
The other branch of the inquiry has not been very distinctly adjudicated in this State, although the admissibility of entries made under circumstances like those in this case was apparently approved in Payne v. Hodge (71 N.Y. 598). We are of opinion that the rule as to the admissibility of memoranda may properly be extended so as to embrace the case before us. The case is of an account kept in the ordinary course of business, of laborers *Page 581 
employed in the prosecution of work, based upon daily reports of foremen who had charge of the men, and who, in accordance with their duty, reported the time to another subordinate of the same common master, but of a higher grade, who, in time, also in accordance with his duty, entered the time as reported. We think entries so made, with the evidence of the foremen that they made true reports, and of the person who made the entries that he correctly entered them, are admissible. It is substantially by this method of accounts, that business transactions in numerous cases are authenticated, and business could not be carried on and accounts kept in many cases, without great inconvenience, unless this method of keeping and proving accounts is sanctioned. In a business where many laborers are employed, the accounts must, in most cases, of necessity, be kept by a person not personally cognizant of the facts, and from reports made by others. The person in charge of the laborers knows the fact, but he may not have the skill, or, for other reasons, it may be inconvenient that he should keep the account. It may be assumed that a system of accounts based upon substantially the same methods as the accounts in this case, is in accordance with the usages of business. In admitting an account verified, as was the account here, there is little danger of mistake, and the admission of such an account as legal evidence is often necessary to prevent a failure of justice. We are of opinion, however, that it is a proper qualification of the rule admitting such evidence, that the account must have been made in the ordinary course of business, and that it should not be extended so as to admit a mere private memorandum, not made in pursuance of any duty owing by the person making it, or when made upon information derived from another who made the communication casually and voluntarily, and not under the sanction of duty or other obligation. The case before us is within the qualification suggested. In Peck v.Valentine (94 N.Y. 569), the memorandum there admitted was not an original memorandum, but a copy of a private memorandum made by an employe of the plaintiff for his own purposes, and not in the course of his duty, or in the ordinary course of business. *Page 582 
The original memorandum was delivered by the one who made it, to the plaintiff, who lost it, but testified that the paper produced and received in evidence was a copy. The person who made the original memorandum was unable to verify the copy. The court held that the copy was improperly admitted in evidence. The decision in Peck v. Valentine rests upon quite different facts from those in this case.
In respect to the admission of the account of material, we think that part of the account based upon the reports of Madden was admissible on the same grounds upon which we have justified the admission of the time-book. Madden, in substance, testified that he knew the facts and properly reported them, and Wilt testified that he entered them as reported. The part of the account of materials, the items of which were furnished by Coughlan, was not strictly admissible. Coughlan does not appear to have had personal knowledge of the quantity of stone delivered on his part of the work, but took the count of the carman, and his reports to Wilt were based upon the reports of the carman to him. The carman was not called, and the evidence of Wilt and Coughlan was mere hearsay. If the attention of the court had been called by the defendant to this part of the account, and objection had been specifically taken to the items entered upon the reports of Coughlan, the objection would, we think, have been valid. But the objection was a general objection to the whole account. It was clearly admissible as to the items reported by Madden, and, we think, the general objection and exception is not available to raise the question as to the admissibility of the items entered on the report of Coughlan, independently of the others. The whole amount of materials embraced in the recovery was small, and, we think, no injustice will be done by affirming the judgment.
The judgment should therefore, be affirmed.
All concur.
Judgment affirmed. *Page 583