### IRVING *v.* CLAGGETT.

*(Supreme Court, General Term, First Department.* March 28, 1890.)

EVIDENCE—BOOK-ENTRIES—AUTHENTICATION.

In an action for detective services, plaintiff, in order to prove the number of days during which his detectives had performed their services, offered in evidence a book in which the entries had been made by himself, and testified that the entries had been first made in another book, which had been lost, and that the entries made in that book were from slips and reports returned to him by the detectives; also, that the book produced by him contained an accurate copy of the entries made in the first book. The slips were not produced, having been lost; and the only evidence that the statements which they contained were true was that of plaintiff and another witness, to the effect that at different times they had observed the different detectives apparently in the discharge of their duties. *Held,* that the book was not admissible in evidence against defendant, nor was it made so by the fact that its contents were communicated to defendant's attorney; it not having been shown that the extent of the services was reported to him, or that he accepted the reports for that object. BRADY, J., dissenting.

Appeal from judgment on report of referee.

Action by William G. Irving against Sumner E. Claggett. There was a judgment for plaintiff and defendant appeals.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Nathaniel A. Prentiss,* for appellant. *J. A. Dennison,* for respondent.

DANIELS, J. The plaintiff's demand was for services rendered by himself, and by other persons in his employment, as detectives, and for money expended by him, in searching for and securing witnesses to be used in support of a contest made concerning a will, which was heard and tried before the surrogate of the county of New York. For himself, he claimed to have become entitled by the result of the contest to the sum of $2,500; and the residue of the charges for services were for detectives in his employment in and about the same business, amounting to the sum of $5,570. It was generally stated by himself in the evidence which he gave upon the trial, and by the witness Wendell, who was examined on behalf of the defendants, that detectives were employed by the plaintiff, and rendered services in discovering and obtaining testimony and witnesses to aid the defendants in their contest. And, to prove the number of days during which these detectives rendered their services, and for which it was claimed the plaintiff was to receive the sum of $10 a day, he produced, and offered to read in evidence, a book in which the entries had been made by himself. These entries are stated to have been first made in another book, which was not produced upon the trial, but which had been lost or disposed of, and was consequently out of the power of the plaintiff. The entries made in that book, he testified, were from slips and reports returned to him by the detectives, and that the book produced by him contained an accurate copy of the entries made in the first book from these slips and reports. The slips themselves were not produced, but they had been lost or destroyed; and no evidence, except of the most general nature, was given on behalf of the plaintiff to prove that the statements contained in the reports and slips were truthful, or that the services for which the charges were made had in fact been rendered. There was this general evidence that he at different times, and also this other witness, had observed the different detectives apparently in the discharge of their duties. But these observations were casual only, and in no manner proved that the detectives had performed the extent of services mentioned and charged for in the book.

When the book was offered to be used in evidence, it was objected to as having been made upon reports received from other persons, and as incompetent. But the objections were overruled, and the defendant's counsel excepted, and the book was permitted to be used by way of evidence in support of these charges. The plaintiff, without it, had no recollection of the items, and was dependent upon these charges in the book to make out and sustain his action for the compensation claimed to be payable to the different detectives. After it was ruled by the referee that the book might be used by the witness to make out his case, it was then agreed that a copy of the entries in the book might be put in evidence in the case, subject to the objections and exceptions already taken, and that copy was introduced; and upon the force and effect of this evidence the referee made his report, by which he allowed the charges made in favor of the plaintiff, and, after deducting $3,600 paid to him, directed a judgment for the sum of $5,331.88, the balance found to be due him, together with interest. These items of charges for the services of detectives were not otherwise proved than by the entries made in the book by the plaintiff from the preceding book, in which the entries were made from the slips made and reports furnished of the services claimed to have been rendered; and the proof upon which the case was heard and decided, was, in substance and effect, no more than what the detectives themselves had stated in their reports, or was mentioned in these slips, as to the extent of the services performed by them. The evidence traced back in this manner consisted, as to the extent of the charges, of no more than the unsworn statements or reports of the detectives, and that was not evidence against the defendants in this action, and they were not made evidence by the circumstance that what they had reported was communicated to the attorney for the defendant; for it was not shown that it was reported to him the extent of services they claimed to have performed, or that he assented to or accepted their reports or statements for that object, but what seems to have been reported to him was what these detectives had observed and discovered, and the witnesses who would be obtained by reason of their services. This evidence fell far short of what is required to authenticate charges made in this manner, so as to render them admissible against the party or parties to be affected by the charges. What should have been done to make this book or the charges contained in it evidence was proof from the detectives themselves, or otherwise, that they truthfully reported to the plaintiff the time devoted by themselves to this employment; and then, after that proof should be made, the further evidence of the plaintiff that the charges were accurately entered in the books might have rendered them evidence. The legal rule upon this subject was very fully examined in *Mayor, etc., of New York* v. *Railroad Co.*, 102 N. Y. 572, 7 N. E. Rep. 905. But there the performance of the services charged in the books were shown to have been rendered and reported accurately before making the charges, and to have been correctly entered in the books which were received; and that is the least, in a case of this description, upon which the law will permit the entries in the books to be read in evidence. *Gould* v. *Conway*, 59 Barb. 355; *Ives* v. *Waters*, 30 Hun, 297; *Mayor, etc., of New York* v. *Railroad Co.*, 31 Hun, 241. In this last case the opinion to this effect was delivered by Mr. Justice BRADY. An exception exists in favor of a party keeping his own books where, upon proof by persons with whom he has settled by the books, that he keeps true and honest accounts, and that some of the articles have been delivered, the books may be read. *McGoldrick* v. *Traphagen*, 88 N. Y. 334. But this case is not within that exception. No futher evidence proving the extent of the services of the detectives was given sustaining the ruling of the referee by which these entries were permitted to be read as evidence. The testimony of Wandell, one of the detectives, on the contrary, was to the effect that the entries made in the first book were made by a young man in the plaintiff's employment; and, if he was right as to the

fact, then still further evidence was required from this person to prove that his entries were correctly made. In no view of the evidence, as it was given, were the entries entitled to be received or acted upon as proof by the referee; and the judgment should be reversed, and a new trial ordered, with costs to the defendant to abide the event.

VAN BRUNT, P. J., concurs.

BRADY, J., (*dissenting.*) The defendants were the heirs and next of kin of James H. Payne, who died in December, 1885. One John H. Wardwell commenced proceedings before the surrogate of this county to establish an alleged lost will by the terms of which the estate of James H. Payne was given to him. Theodore H. Swift was the attorney of record for the defendants in that proceeding. He was duly authorized by them to appear for them in the proceeding mentioned, and in any and all proceedings which might be brought against the estate of the deceased, and to do any and all things necessary to protect their interests therein. On the 8th day of October, 1886, he made an agreement with the plaintiff for his employment, and that of a number of detectives, for work to be done on the part of his clients, who were contestants before the surrogate, agreeing to pay them for their services $10 a day, and their expenses and disbursements,.and also, as an inducement to the plaintiff to give his personal time and attention to the case, agreeing to pay him $2,000 or $2,500 in case the defendants were successful. Pursuant to this contract the plaintiff employed a number of men, entered upon the performance of his duties, and was continuously engaged therein from the 9th day of October, 1886, to the 2d of February, 1887, both inclusive, and rendered services which were, substantially, continuous night and day during the period mentioned. He was personally present every day during the trial, and made his reports every day to the attorney and counselor for the defendants of what his men had done, and was in consultation with them every day, and some times more than once a day; all of which work, it appears, was necessary for the protection of the defendants' interests. It also appears that the work for each day was laid out under the immediate direction of the defendants' attorney and counsel, and that the information collected was used on the trial before the surrogate; and it does not appear that any complaint was ever made as to the manner in which these services were performed, or that the expenses incurred and charged were improper. It also appeared that the defendants' counsel expressed a wish that the case should be thoroughly investigated, the object being to frustrate what was conceived to be a fraudulent scheme on the part of Wardwell. The contestants were successful. It must be said, further, that there was no contest as to the fact that there was a contract made with the plaintiff, or that services were rendered under it; the real issue being as to the extent and value of the services, and as to the additional sum to be paid to the plaintiff in case of success. The referee found in favor of the plaintiff the balance due under the general employment on the terms mentioned, and that $2,500 additional was also due to him under the contract.

At the close of the plaintiffs' case, however, the defendants' counsel moved to dismiss the complaint upon three grounds: "*First*, that there was no evidence of the rendition of services in excess of the sum received by the plaintiff; *second*, that the plaintiff had failed to prove that what was done by him under his employment by Swift was within the scope of the power conferred upon the latter; *third*, that the testimony proved the agreement to have been made, and that the credit was given by the plaintiff to the administrators, and the action should therefore have been brought against them. There was no defense set up in the answer suggesting this last proposition. Independently of which, the testimony clearly shows that the agreement was made with Swift, who was the agent and attorney of the defendants, and in reference to

whom it appeared that he would not have taken the case without such authority from the heirs.   With regard to the second proposition, it is only necessary to say that it already appears that the heirs conferred upon Swift the power to do what he deemed necessary for the protection of their interests; and what was done, therefore, by him, was done with that end in view.   In this result the plaintiff's claim is sustained by the testimony of Titus, who, it appears, was subsequently employed, in the defendants' interest, to oversee that the detective work was done, and who was in constant communication and consultation with Mr. Swift.   In relation to the first proposition, it must be said that it concedes the employment of the plaintiff to have been a proper one, under due authority; for the reason that it disavows only the rendition of services in excess of the amount paid, and which was clearly paid under the contract made with the plaintiff.

The serious contention, however, springs out of the peculiar character of the evidence by which the services were proved.   The plaintiff produced his book of account.   It was one kept by him in the ordinary course of his business, the entries in which were made in his own handwriting.   It was made up in the following way:   Every morning, each of the detectives who had been engaged the day or the night before reported what work he had done on what were called "slips."   These were were sent to Mr. Swift, the attorney. The plaintiff entered these results, also, and upon his day-book the name of each man, the amount of the expenses paid him, and the amount of his salary; and from this day-book and the slips the account-book produced was made up. It was a book of original entry, except the dates and the amount of expenses. The day-book was lost, and from the evidence it seems to have been carried away and sold, with the waste paper of the plaintiff's office.   The plaintiff testifies that the entries were correctly made from the slips given to him, and were made at or near the date of the slips; and it seems that at the time of the receipt of the slips he was well advised of their accuracy, from his knowledge of the services to which they related.   He said that he was out every day from morning until night; that he was all over, at all times, overseeing his men; that he saw them every day,—three or four times a day,—so that he had a personal knowledge as to the rendition of the services by the persons whom he employed; and this evidence was supplemented by that of Titus, who, we have seen, was specially employed to oversee the detective work.   He approved of the reports of the men, having, if not ample, certainly sufficient, knowledge upon the subject to state that their work was done.   In addition to which, it must be kept in view that the result of these reports was communicated daily to the defendants' attorney, Swift, and whatever was considered valuable used to protect the defendants' interests.   But the objection still exists that none of the detectives whose work is indicated by the slips appeared as witnesses, and that in that respect the testimony upon which the plaintiff's case rests differs from some of the adjudicated cases.   But this difference is supplied sufficiently, it is thought, within the doctrine of *McGoldrick* v. *Traphagen*, 88 N. Y. 334; and *Mayor, etc., of New York* v. *Railroad Co.*, 102 N. Y. 572, 7 N. E. Rep. 905, by the statement of the plaintiff of his own work, and of Mr. Titus of his work, and their supervision of the men engaged, and, indeed, of one of defendants' witnesses, Mr. Wandell, that the men were engaged in doing the work which was contemplated by the agreement between the plaintiff and Swift, acting on behalf of the defendants. The evidence herein showed, thus, the engagement of the men, a report by them of each day's work to the plaintiff, his own personal inspection of them while at work, and that of Mr. Titus, and the record of the slips stated, with their results.   This proof is regarded as stronger than that which was held to be sufficient in the case of *McGoldrick* v. *Traphagen, supra*, and as decidedly within the principle stated in *Mayor, etc., of New York* v. *Railroad Co., supra*, in which, where an account had been kept, in the ordi-

nary course of business, of laborers employed in the prosecution of the work, based upon daily reports of the foremen having charge of the men, who, in accordance with their duty, reported to another subordinate of a higher grade, under the same common master, and he also, in the course of his duty, entered the time as reported, and the foreman testified that they made true reports, and the persons who made the entries that he correctly entered them, it was held that entries so made are admissible as evidence to show the amount of work done.

None of the other exceptions call for any particular comment. It is sufficient to say that they are of no significance, and are unavailing.

This leaves for consideration only the further question as to the propriety of awarding to the plaintiff the extra compensation of $2,500 which was given by the referee, and which, as to amount, is abundantly sustained. The estate was large, and the amount in jeopardy was considerable; and more than ordinary devotion was excited by the voluntary promise that if the attempt to establish the alleged lost will was defeated an extra compensation would be given. This seems to have stimulated the plaintiff to extra exertion; for, according to his evidence, which was not successfully gainsaid, he labored in the cause night and day, and was at all times at his post when required, and no complaint was made against him or his methods by any person representing the defendants' interests. It may be said, in conclusion, that no doubt can be entertained of the value and efficiency of his services, and that the claim, therefore, seems to be in all respects meritorious. For these reasons the judgment should be affirmed, with costs.