# 𝕮𝖆𝖘𝖊𝖘

---

CAROLINE B. POWERS, as Administratix, with the Will Annexed, of HOLLIS L. POWERS, Deceased, Respondent, *v.* FRANCIS W. SAVIN and Others, Appellants.

*Evidence — entries in a loan-book of a broker — against one's interest — made subsequently — and by an assignee for creditors — answer setting up an independent issue not raised by the complaint.*

In an action brought by the administratrix of Hollis L. Powers the complaint alleged that Powers had certain shares of railway stock in the hands of the firm of Bogart & Co., and that that firm without authority had pledged them with the firm of Savin & Vanderhoof for a loan, and demanded judgment against Savin & Vanderhoof for a surplus beyond the advances made upon the stock by Savin & Vanderhoof.

It appeared that Bogart, Jr., sent these securities to Savin & Vanderhoof, and at the same time made a memorandum of the loan on a New York Stock Exchange "ticket," which memorandum he testified was correct. At the same time he made a memorandum on the loan envelope of the collaterals contained therein. In order to identify the stock pledged with that owned by Powers the loan-book of Bogart & Co. was admitted in evidence. These memoranda did not agree, the entry on the loan-book containing, and the entry on the envelope not containing, the initials "H. L. P." The entry on the loan-book was made some days after the transaction, and after the firm had failed. The New York Stock Exchange ticket was lost.

The person who called off, as was claimed, to the bookkeeper of Bogart & Co., who kept the loan-book, the substance of the "ticket," was not produced as a witness upon the trial.

*Held*, that the testimony in regard to the entries on the loan-book was not sufficient to justify their being received in evidence.

That as Bogart & Co. were not parties to the action, as the entries were made after the assignment by the firm, and as the person who made the entries knew nothing of the facts to which they related, the entries were not admissible, as being against their own interest. (O'BRIEN, J., dissenting.)

That as the entries were made after Bogart & Co. had failed, and were made by their assignee, they were not the entries of the firm, nor made in the usual course of business.

Under section 1204 of the Code of Civil Procedure, providing, among other things, that a judgment may grant to a defendant any affirmative relief to which he may be entitled, a defendant cannot tender an independent issue between himself and a co-defendant which was not raised by the complaint. (Per O'BRIEN, J.)

APPEALS by the defendants, Francis W. Savin and Elisha W. Vanderhoof, composing the firm of Savin & Vanderhoof, and by John Wheeler, as assignee for the benefit of the creditors of O. M. Bogart & Co., from a judgment, entered in the office of the clerk of the city and county of New York on the 9th day of December, 1891, in favor of the plaintiff for $4,300, and interest and costs, after a trial before a referee.

*Thaddeus D. Kenneson* and *John Notman*, for the appellants.

*L. C. Waehner*, for the respondent.

VAN BRUNT, P. J. :

This action was brought by the plaintiff, claiming the ownership by her testator of 300 shares of Chicago, Milwaukee and St. Paul stock, which had been pledged, with other securities, by the firm of O. M. Bogart & Co., without right or authority, with the firm of Savin & Vanderhoof as collateral for a loan of $50,000, which securities were subsequently sold; and judgment is demanded for the surplus realized upon such sale over the amount of said loan.

Mr. Justice O'BRIEN, in his opinion, states the questions presented by the pleadings to be :

*First.* Had Hollis L. Powers, the plaintiff's testator, title to the stock ?

*Second.* Did Bogart & Co., without his consent, authority or right, pledge such stock ?

*Third.* Can the firm of Savin & Vanderhoof hold the stock or apply the surplus realized upon the sale thereof, upon account of any

other indebtedness due them from Bogart & Co. as against the plaintiff ?

*Fourth.* Is the defendant Wheeler, upon the facts proven, entitled to judgment for the surplus realized upon the sale of other securities pledged for a second or other loan made by the firm of Bogart & Co. ?

We concur in the conclusion arrived at by Mr. Justice O'Brien as to the third and fourth of these questions. In view of the conclusion reached by us as to the first, it is entirely unnecessary to decide the second. And we cannot concur in the conclusion arrived at by him as to the first.

It appears from the evidence that, almost immediately after the pledge of the stock in question, Bogart & Co. made a general assignment for the benefit of creditors to the defendant Wheeler; and the attempt is made to identify the St. Paul and Milwaukee stock pledged for the debt of Slavin & Vanderhoof as stock belonging to the plaintiff's testator by entries now appearing upon the loan-book of Bogart & Co. And the determination of the question now under discussion depends upon whether such entries were admissible in evidence or not.

It appears that Bogart, Jr., sent the securities which were pledged to Savin & Vanderhoof, and made a memorandum of the loan on a Stock Exchange ticket called "tickets," which memorandum he testified was correct, and at the same time he made a memorandum on the loan envelope of the collaterals therein contained. These memoranda were the only memoranda made of the loan in the first instance. The slips were not produced upon the trial, but evidence was introduced showing that they were made for temporary purposes only, and that, when entries were made therefrom into the books of the firm, no attention was thereafter paid to them. There was no evidence that these particular memoranda had been lost, although there was some to the effect that a search had been made for them; and in response to a notice to produce, a statement was made by one of the attorneys that a search had been made for them, but they could not be found. It does not appear with certainty what was done with these memoranda. And there is no evidence as to what was put upon the slips; Mr. Bogart's best recollection was that he placed them in an envelope; and that the envelope was

with the books and was left for the cashier, Townsend, to enter in the loan-book. Townsend remembers nothing about the original memoranda, although the entries were made by him in the loan-book. Such entries were not made contemporaneously, but after the failure of Bogart & Co., and after Townsend had come back from being absent, which he states might have been a week after the failure. Townsend testified that he either copied the memoranda from slips (temporary Stock Exchange slips) or that they were called off to him. And it does not appear that there was any other source from which he could get the entries.

As Mr. Justice O'Brien has shown, the learned referee states that the memorandum of entries on the envelope correspond with the entries in the loan-book; and that in this a grave error was committed, because in that part of the entry which is most material to this action there is a fatal discrepancy, the entry on the envelope not containing the initials " H. L. P.," which appear opposite the entry in the loan-book in relation to the 300 shares of St. Paul stock, and which has been held to indicate that the stocks in question were the 300 shares of St. Paul stock belonging to the plaintiff's testator.

The evidence of this entry in the loan-book is claimed to be admissible because of the rule laid down by the Court of Appeals as to the admission of account books in *The Mayor* v. *Second Avenue Railway Company* (102 N. Y., 572). But a brief examination of that case will show that the condition of the proof was entirely and essentially different from that which appears by the record in the case at bar. The case cited was an action by the mayor, etc., of New York to recover from the Second Avenue Railroad Company for work and labor and materials for which the railroad company was claimed to be liable. The work done and the materials furnished related to the pavement of the streets in and about the rails of the defendant's railroad. In order to prove the time spent in the doing of this work, the plaintiff called as a witness the foreman who had charge of the work, under whom were two gang foremen, each having charge of a separate gang of laborers. The chief foreman kept a time-book in which was entered the name of each man employed. He visited the work twice a day, and while there took on the time-book the time of each man as reported to him by the gang fore-

man, who did not see the entries; and he also marked the men's names as he saw them and knew their faces. The gang foremen testified that they correctly reported to the chief foreman the names of the men who worked; and if any did not work full time they reported that fact also. And the main foreman testified that he correctly entered the reports in the time-book as reported to him in the usual course of business each day. And it was held that, with such evidence, the books were admissible, because the gang foremen were testifying of their own knowledge as to the correctness of the reports made by them to the main foreman, and the main foreman testified that in this time-book he correctly entered the reports as made to him.

Under such condition of proof the court held the evidence to be admissible, but in the case at bar the evidence was essentially different. In the first place there is no evidence as to what Bogart, Jr., entered upon the slips, and in view of the fact of the entry upon the loan envelope the presumption would seem to be that the letters "H. L. P." did not appear upon the slip. And, further, the book-keeper Townsend, who made these entries, had no recollection as to whether he entered them from the slips or from somebody who called them off to him. Therefore, we do not know that even what was upon the slips was entered in these books. The person who called off these entries is not produced, and there is a very decided link missing which was supplied in the case cited. And in view of the fact that it was claimed that the entries upon the slips and the envelope corresponded the inference would be that, as the letters "H. L. P." did not appear upon the envelope, they did not appear upon the slip, and Townsend must have got his information somewhere else. How, we do not know, except, perhaps, it may have been from the inspiration of this somebody who made the announcements to Townsend for entry, whether from the slips or not does not appear.

But Mr. Justice O'BRIEN has come to the conclusion that upon another principle these entries are admissible, viz., that they are declarations found in the books of Bogart & Co. against their interest in respect to the ownership of these 300 shares of stock. And attention is called to the rule laid down in Greenleaf on Evidence, that "there are two classes of admissible entries, between which

there is a clear distinction in regard to the principle upon which they are received in evidence; and one of the classes consists of entries made against the interests of the party making them; and these derive their admissibility from this circumstance alone. It is not, therefore, material when they were made. The testimony of the party who made them would be the best evidence of the fact; but if he is dead, the entry of the fact made by him, in the ordinary course of business and against his interest, is received as secondary evidence in a controversy between third persons." And attention is also called to the case of *Adams* v. *Bowerman* (109 N. Y., 23), where the entries in a firm's books as to its solvency were admitted for the purpose of proving the insolvency of that firm in an action to which they were parties.

Now, it seems to us that this principle has no application whatever to the case at bar. If Bogart & Co. were suing here, or were the defendants in this action, it is possible that the principle might apply, but probably not, as the person who made the entries is alive; but in the present case the party making the entry is not only alive, but upon being called shows that he knows nothing about the facts to which the entry related. But when we take into consideration the fact that these books were not Bogart & Co.'s books at this time, and that they were being written up that the assignee might ascertain the condition of the estate of which he was the assignee, it is clear that such entries were not made in the ordinary course of business, and that the title of Bogart & Co. to this stock could not be impeached or impaired thereby. It is no duty of an assignee to confess judgment, or to make admissions in reference to the liabilities of his assignors, which would be the result of the admission in evidence of an entry of this description.

In the face of the evidence showing the circumstances under which this entry was made; showing that the party who made it had no knowledge whatever of the transaction; showing that a material part of the entry, as far as this case is concerned, seems to have been evolved out of his own imagination, it certainly cannot be the law that upon such an entry the title of property can be disposed of.

We think, therefore, that it was error to admit these entries in evidence; and because thereof the judgment must be reversed and

a new trial ordered before another referee, with costs to appellants to abide the event.

ANDREWS, J., concurred.

O'BRIEN, J. (dissenting):

This action was brought by plaintiff claiming that her testator was the owner of 300 shares of the stock of the Chicago, Milwaukee and St. Paul Railroad, which, without right or authority, were pledged by the firm of O. M. Bogart & Co., with whom said shares were deposited, with the firm of Savin & Vanderhoof, as collateral, with other securities, for a loan of $50,000, which securities were subsequently sold; and the judgment demanded is the surplus realized by the sale of the pledged property over the amount advanced by the said pledgees to the pledgors thereof, O. M. Bogart & Co. The latter firm, almost immediately after the pledge of the stock in question, made a general assignment for the benefit of creditors to the defendant Wheeler.

The questions presented by the pleadings were:

*First.* Had Hollis L. Powers, plaintiff's testator, title to the stock?

*Second.* Did O. M. Bogart and Co, without his consent and authority or right, pledge such stock?

*Third.* Can the firm of Savin & Vanderhoof hold the stock or apply the surplus realized upon the sale thereof upon account of any other indebtedness due them from O. M. Bogart & Co. as against the plaintiff?

*Fourth.* Is the defendant Wheeler, upon the facts proven, entitled to judgment for the surplus realized upon the sale of other securities pledged for a second or other loan made by the said firm of Bogart & Co.?

The evidence, we think, establishes the fact that, if competent proof was presented to prove Powers' title to the stock, the referee was justified in concluding that the same was pledged by Bogart & Co. without right or authority.

In respect to the right of Savin & Vanderhoof to apply the surplus to any other indebtedness than the specific loan made on the faith of the securities, this question has been settled by this court upon the former appeal, holding that they were "entitled to reim-

burse themselves for payments made on the strength thereof, but not to a greater extent."

The solution of the question as to whether the defendant Wheeler was entitled to a judgment for the surplus realized upon the sale of the securities pledged for the second loan must depend upon whether or not in this action the rights, as between the defendants to such surplus, can be determined.

Section 1204 of the Code of Civil Procedure provides : "Judgment may be given * * *. for or against one or more defendants. It may determine the ultimate rights of the parties on the same side, as between themselves ; and it may grant to a defendant any affirmative relief to which he is entitled."

In construing this section it has been held that a defendant cannot tender an independent issue between himself and a co-defendant which is not raised by the complaint. (*Lansing* v. *Hadsall*, 26 Hun, 619 ; *Payn* v. *Grant*, 23 id., 134 ; *Hall* v. *Ditson*, 5 Abb. N. C., 198 ; 55 How. Pr., 19.) The complaint alleged that Powers had in the custody and possession of Bogart & Co., who were bankers and brokers engaged in business in this city, 300 shares of St. Paul stock, and that, without his knowledge and consent, they pledged the said stock, together with other stock of the defendant, to Savin & Vanderhoof for a call loan of $50,000. It appeared by the evidence that the surplus realized over and above the amount of the loan of $50,000 upon the sale of the collateral was $4,300, and it was to reach this sum that the plaintiff brought this action. The evidence, however, showed, as the amended answer of the defendant Wheeler alleged, that there were two separate and distinct loans of $50,000 made by Savin & Vanderhoof to Bogart & Co. upon entirely different securities, and that the stock claimed by Powers was included in the collateral pledged as security for the first loan of $50,000. It appeared that there resulted from the so-called first loan, for which the plaintiff's securities were pledged, a surplus of $4,300, and from the second loan the sum of $3,518.75 ; and it is for this latter amount, upon the evidence, that the defendant Wheeler, as assignee, insists that he is entitled to a judgment.

We do not think that the independent claim for which the defendant Wheeler may have a cause of action against Savin & Vanderhoof, which is entirely independent and in no way connected with

the demand of the plaintiff, can be litigated, or the rights of the parties determined in this action. The contest between the latter firm and Wheeler over the surplus on the second loan has no connection whatever with the contest waged between the plaintiff and the defendants over the surplus on the first loan. The subject-matter in both suits is entirely separate and distinct, and we do not think that section 1204 was intended to give any such right as to permit one defendant to litigate a separate and distinct claim which he might have against another co-defendant with respect to a matter with which the plaintiff has no concern, and with reference to which no allegation is contained in his complaint.

Another position taken by the defendant Wheeler has already been disposed of adversely upon the former appeal, namely, that plaintiff's testator would only be entitled to such proportion of the surplus arising out of the loan in which his 300 shares of St. Paul stock entered as the proceeds of such stock on sale bore to the whole value of all the securities in that particular loan. This leaves us to briefly consider the first, most important, and, upon the evidence, the most difficult question presented as to whether the evidence offered to support proof of plaintiff's title to the stock was competent. The title to such stock may be said to rest mainly, if not entirely, upon entries from the loan book of O. M. Bogart & Co., which, if competent with the other evidence in the case, would be sufficient to justify the conclusion reached by the referee; but the absence of such entries from the record would necessitate the conclusion that the burden placed upon the plaintiff of proving title had not been sustained. The testimony bearing upon such entries shows, in brief, that Bogart, Jr., who sent the securities to Savin & Vanderhoof, made memoranda of the loans on a stock exchange ticket called "tickets," which memoranda he testified were correct; that these memoranda on the tickets or slips were the only memoranda made of the loans in the first instance.

These memoranda were not produced upon the trial, the evidence showing that they were made for temporary purposes only, and that when entries were made therefrom into the books of the firm no attention was thereafter paid to them. These particular memoranda were not shown, however, to have been lost, although evidence was given that a search was made for them, and in response to the notice

to produce, a statement was made by one of the attorneys that a search had been made for them, but they could not be found.

It nowhere appears that these memoranda were handed to the bookkeeper, and that the entries in the books objected to were copied therefrom. Bogart, Jr., stated that he had no present recollection of what he put on the slips; nor does he know whether they came into the possession of Mr. Townsend after he made them, and who it is conceded made the entries in the book. His best recollection was that he placed them in an envelope, and that the envelope was with the books, and that they were so left for the cashier Townsend to enter in the loan book. Townsend remembers nothing about the original memoranda, and his testimony shows that the entry by him in the loan-book was not made contemporaneously but was made after the failure of Bogart & Co., and after Townsend had come back from being absent, which he states might have been a week after the failure.

The referee in stating his reason for the admission of this loan entry in evidence, so far as the facts for its admission were concerned, summarizes them quite correctly.

" The testimony seems to me to show that Mr. Bogart made slips of the transaction and that the slips cannot now be produced; that he had charge of the negotiation of the loans and that slips were made in the usual course of business, and at the same time he made a memorandum on the loan envelope of the collaterals therein. The transaction is entered in the loan-book of O. M. Bogart & Co., in Mr. Townsend's handwriting, and the loan-book is shown to be the loan-book of O. M. Bogart & Co.; and that the memorandum on the loan envelope, made at the time of the transaction, corresponds with the entry in the loan-book, in Mr. Townsend's handwriting. Mr. Townsend testifies that he either copied the memorandum from slips (the temporary Stock Exchange slips) or that it was called off to him, and it does not appear that there was any other source from which Mr. Townsend could get the entries. In other words, there is no evidence to show that there was any other memorandum except Bogart's slips from which Mr. Townsend could have made the entry in the loan-book, and the memorandum or entries on the envelope correspond to the entries in the loan-book."

It should be remembered, however, in this connection, that the correspondence between the memorandum on the loan envelope and the entry in the loan-book is not complete.

In the loan-book entry, at the left of the " Three hundred St. Paul," are the initials " H. L. P.," which it was testified were the initials of and stood for Hollis L. Powers, and were set opposite to this entry to indicate that the 300 St. Paul stock belongs to him ; and it is upon this entry that the proof of the title to this stock, being in Hollis L. Powers, depends. Upon the loan envelope sent to Savin & Vanderhoof the 300 St. Paul stock is mentioned, but there is nothing thereon to indicate either by the letters H. L. P. or by any other initials or mark, to whom such stocks belonged. This evidence, the respondent claims, is admissible upon the rule laid down by the Court of Appeals as to the admission of account books in the case of *The Mayor* v. *The Second Avenue Railroad* (102 N. Y., 572).

A reading of the opinion in that case will show that the court was impressed with the view that it was extending the rule as to cases in which account books in favor of the party will be admitted ; and, solely upon the facts appearing in that case, such evidence was held to be competent.

It is unnecessary for us, in view of the conclusion at which we have arrived, to point out the distinction appearing in regard to the facts in that case and the one at bar, which we think are sufficiently clear and distinct to justify the view, were it not for another principle which we think applicable to such evidence, that it should not have been received because incompetent. In other words, had the evidence, in this case objected to, been entries in favor of Bogart & Co., which was the question presented in *The Mayor* v. *Second Avenue Railroad Company* (*supra*), it would have been error to receive such entry. Here, however, the entry is resorted to by the plaintiff, and is relied upon as a declaration against Bogart & Co. in respect to the ownership of these 300 shares of stock ; and, as whatever rights the defendants can assert were derived from Bogart & Co. alone, they are equally admissible against such defendants.

In Greenleaf on Evidence (14th ed., § 120), it is said : " There are two classes of admissible entries, between which there is a

clear distinction, in regard to the principle on which they are received in evidence. The one class consists of entries made against the interest of the party making them, and these derive their admissibility from this circumstance alone. It is, therefore, not material when they were made. The testimony of the party who made them would be the best evidence of the fact; but if he is dead, the entry of the fact made by him in the ordinary course of his business, and against his interest, is received as secondary evidence in a controversy between third persons."

This distinction, between entries in favor of and entries against the person in whose books the entries are made, finds support in the case of *Adams* v. *Bowerman* (109 N. Y., 23), where, in an action against a sheriff for an alleged unlawful taking, the latter justified under process against the firm from which plaintiffs acquired title, alleging that said firm acquired title by purchase on credit induced upon false representations as to its solvency; and it was held that the books of the firm were proper evidence against plaintiff upon the question of solvency, and knowledge thereof on the part of the members of the firm, and that the rejection of such evidence was error. This case we regard in principle as applicable to the question here presented.

The title or right of the defendants to these 300 shares of stock were derived through Bogart & Co., and entries in their account books, if shown to have been made in the regular course of business, even though not contemporaneous, would be admissible, not in their favor, but as against them and those claiming under them. The suggestion that upon the fact appearing these entries were made after the failure, and when the firm had ceased to do business, we regard as being without force, for the reason that in connection with that fact it appears that subsequent to the failure the bookkeepers of Bogart & Co., were for some days engaged in making up and balancing the same with a view of determining the status of that firm, and the entries objected to were made in the course of such business.

Where a failure occurs, and matters relating to the business of a failing individual or firm are not entered upon their books, it is customary in the ordinary course of business to have such matters and entries relating thereto inserted for the purpose of determining the

condition of the firm. We think, therefore, that the referee correctly ruled in admitting such entry.

It is unnecessary for us, in view of the former appeal, and the facts appearing upon the two trials, to advert further to the law or facts which control many of the subsidiary questions raised upon this appeal, it being sufficient, after having disposed of the principal questions presented by this appeal, to say that, after an examination of the voluminous record, and the other objections made to the affirmance of the judgment, we do not regard any of them as well taken, and our conclusion is that the judgment appealed from should, in all respects, be affirmed, with costs.