(91 App. Div. 345.)

### CORNELL v. STANDARD OIL CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department. February 11, 1904.)

1. BUILDING CONTRACT—CONSTRUCTION—DELAY—DAMAGES—EXCUSE.

Where a building contract provided that the contractor should forfeit $50 a day for each day's delay after the time specified for the completion of the work until a certain date, and $100 a day for each day's delay thereafter, but that he should not be liable for delay caused by independent contractors under contract with defendant, the contractor was not chargeable for any delay, without regard to the reasons therefor, if he was prevented from finally completing his contract, as to any particular part of the work, by delays occasioned by the acts of defendant, its contractors, servants, or agents.

2. SAME—PENALTY—COMMENCEMENT.

Where a building contract contained a penalty for the contractor's failure to complete the building within the time required, such penalty would not begin to run until the contractor had full opportunity to complete his contract in accordance with its terms.

3. SAME—EVIDENCE.

Plaintiff, a building contractor, agreed to furnish the ironwork for a building, and to complete the setting thereof, within a particular time, or pay a penalty for each day's delay thereafter. The last work to be done under his contract was the setting of a "mullion" front, which could not be done until a bridge over the sidewalk which served to protect pedestrians and for a runway for other contractors, was removed. Plaintiff did not construct the bridge, and was under no obligation to remove it, and it could not be removed until the other work on the building had been completed. It was subsequently removed by other contractors, and within a few days thereafter plaintiff set the mullion and completed his contract. Plaintiff had had the mullion on hand and stored for over a year, awaiting an opportunity to put it in place. *Held*, that plaintiff was only liable for delays occurring after the removal of the bridge.

4. SAME—EVIDENCE.

On an issue as to a contractor's delay in performing his contract, a timebook kept by the contractor and his agents was admissible to establish the date of plaintiff's final completion of the contract.

5. SAME—SUBMISSION OF ISSUES.

Where, in an action on a building contract, the jury found that the building was not in fact completed until the day claimed by defendant, the latter was not prejudiced by the submission of a question to the jury as to whether the contract was completed at an earlier date.

Appeal from Special Term, New York County.

Action by John M. Cornell against the Standard Oil Company of New York. From an order setting aside a verdict of a jury in favor of plaintiff, and granting a new trial, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, INGRAHAM, and LAUGHLIN, JJ.

Lemuel Skidmore, for appellant.

William V. Rowe, for respondent.

HATCH, J. In the year 1895 the defendant was the owner of a large building, extending from Broadway to New street, in the borough of Manhattan. This building was known as 26 Broadway and 71 New street, and measured about 87 feet on Broadway and New street, by about 200 feet deep, and was 10 stories high. The defendant decided to put up 5 additional stories on the top of said building, and erect an extension on the north side thereof, about 27 by 60 feet deep, fronting on Broadway, 15 stories high, and a similar extension fronting on New street. It thus became necessary to build up the extensions from the ground to the level of the top of the old building, and then continue the construction for 5 stories more of the extension and old building together. The foundation of the old building rested upon piles, and, while there was a sufficient number of piles in the entire foundation of the old building to bear the weight of the additional stories, yet these piles were not so placed that the weight of the additional structure would be equally distributed upon them. In order to procure equality of sustaining power, and thus carry the additional weight, equalizing girders were placed upon the top of the old building, and the weight thus distributed over the whole foundation. It appeared upon the trial that the plaintiff on or about the 31st day of January, 1896, entered into a contract with the defendant for the construction of all the iron and steel work required in the building, and to furnish all the material necessary therefor. By the terms of this contract the plaintiff agreed that the work should be finished on or before the 15th day of June, 1896; and the contract contained a clause that for every day's delay caused by the plaintiff in completing the work after the 15th day of June, 1896, he should forfeit $50 a day to July 1st following, and $100 a day for each day's delay thereafter. A reciprocal clause was also provided, by which for every day's delay caused by the defendant the plaintiff should be given an additional day in which to complete the contract, and that the plaintiff should not be liable for any delays caused by independent contractors under contract with the defendant for the performance of other parts of the work. It was further provided in the contract that, in case there was any delay caused by the plaintiff in finishing his work, the defendant might deduct from the amount agreed to be paid as the contract price, and as liquidated damages, any sum which might be due or owing to the plaintiff at the time of the completion of the work. The entire contract price of performing the work—not, however, including the extra work—was $234,000. It was admitted upon the trial that the contract was fully completed in every particular as required by its

terms, save only in the matter of time, and, in addition thereto, some extra work was performed by the plaintiff. The work, however, was not completed until the 17th day of January, 1898, nearly two years after the time agreed upon for its completion. The sole question presented by the issues raised upon the trial was as to who was the party responsible for this delay. At the time of completion by plaintiff of his contract, there was unpaid on the contract price the sum of $28,-900. This amount is not in dispute, but the defendant contends that it has the right not only to withhold this balance due upon the contract price, which it sets up by way of counterclaim, but that it is also entitled to the further sum of $29,750 on account of plaintiff's delay, for which sum, with interest and costs, it demands judgment. It is the contention of the plaintiff, on the other hand, that the delay was caused entirely by acts of negligence of the defendant in unnecessarily occupying the building, and thus preventing the plaintiff from fulfilling his contract, and also on account of the delays of independent contractors of the defendant, over whom the plaintiff had no control. The case was submitted to the jury under a charge of which the respondent upon this appeal makes no complaint. By consent of parties, the court submitted four questions, which the jury were directed to answer, and upon which, by consent, the court was to direct the verdict. The submission, therefore, took the form, so far as the jury were concerned, of a special verdict. These questions were as follows: "Was the plaintiff delayed in the performance of his work by the acts or omissions of the defendant, its agents or servants?" To which the jury answered, "Yes." "If yes, how many days?" The jury answered, "536 days." "Was the contract completed, as plaintiff claims, February 24, 1897, or, as defendant claims, January 17, 1898?" The jury answered, "Completed January 17, 1898." "If not upon either date, when?" To which the jury returned no answer. The effect of this verdict, based upon a computation, showed that there were 581 days of delay in all, 45 days of which were chargeable to the plaintiff, which would entitle the defendant to deduct from the amount due upon the contract price $3,750, and the plaintiff was entitled to recover the remainder of the contract price, if the answers given to the questions by the jury were to stand. This seems to have been conceded by both parties upon the trial, and, had the court exercised its power in favor of the plaintiff, he would have been entitled to the direction of a verdict for $25,150, with interest. The court, however, reserved the question, and, after hearing argument, set aside the verdict as being contrary to the evidence, and from the order entered thereon this appeal is taken.

In the disposition which we make of the case, it is not necessary that we enter upon a discussion of the evidence respecting particular delays as to particular parts of the work, the causes thereof, or who was to blame therefor. The contract was an entire contract for the performance of all of the structural iron work upon this building. Such being its character, it is evident that the plaintiff could not be chargeable for any delays, no matter from what reasons such delay arose, if he was prevented in finally completing his contract as to any particular part of the work, if such delay was occasioned by the acts of the defend-

ant, its contractors, servants, or agents. In other words, if the defendant finally completed the contract as soon as he was permitted so to do by the defendant, then it is of no consequence whether he had prior to that time delayed in the performance of other parts of his contract, so long as such delay did not operate to prevent him from fully completing the contract as soon as he had opportunity. Weeks v. Little, 89 N. Y. 566. It could make no difference in time of completion of his contract by reason of neglect upon particular parts of the work, if the defendant opposed obstacles preventing its full completion at an earlier date. The penalty provided for in the contract would not begin to run until the plaintiff had full opportunity to complete it according to its terms. This was the right reserved to him by its terms, and he could not be deprived of such right by act of the defendant, and charged with penalty for delay based upon any theory that he might have performed other parts of the contract with more expedition, so long as delays, if any arising therefrom, did not operate to prevent the final completion. Defendant offered no testimony, but rested its case at the close of plaintiff's proof.

The construction, in accordance with the plans and specifications, required that there should be placed upon the front of the New street side of the building a particular kind of iron front, called "mullion." This was the last work done under the plaintiff's contract, and, when finished, substantially completed the same. It therefore became important under the rule which we have announced to determine the time when this mullion was set, and whether there was any interference by the defendant or its other contractors which prevented its setting at an earlier date. Upon this subject it appeared that a bridge had been constructed along this side of the building, principally for the masons engaged in the performance of work upon the building; its purpose being to protect passers-by upon the street, and also to serve as a runway for the various contractors in carrying material into the building. The runway was used for such purpose by all of the contractors, including the plaintiff. The testimony, however, on the part of the plaintiff, authorized the jury to find that the plaintiff did not construct the bridge, nor was he responsible for its construction, and he was under no obligation to remove it; nor could it be removed, with safety to pedestrians upon the street, until work upon the building had been completed. It was recognized that it was no part of the plaintiff's duty to remove this bridge, and it was subsequently removed by other contractors. The testimony showed that this removal did not take place until some time in January, 1898, and that within a few days after its removal the plaintiff set the mullion and completed his contract. It appeared without dispute that the mullion had been on hand, stored in the yard of the plaintiff, for over a year, awaiting an opportunity to put it in place. Whatever delay there was in respect to its setting, it cannot be said but that the jury allowed for such delay in finding the number of days' delay for which the plaintiff was responsible. Giving force and effect to this testimony, it is evident that the jury were authorized to find that the plaintiff was prevented by the acts of independent contractors from completely performing his contract until some time in January, 1898. Therefore the jury were

enabled to find—giving the plaintiff this allowance—the number of days' delay which were chargeable to the defendant under the contract, and to exonerate the plaintiff from any further responsibility in failing to complete in the number of days which the jury allowed against him.   The argument in answer to this view of the case proceeds upon the theory that the plaintiff was required to furnish his own runway, under the contract; that he continually made use of this runway; and that, as he was obliged to have a runway, and this continually remained, he was responsible therefor, and for its construction.   It is evident, however, that this bridge was not required solely for the use of the plaintiff.   Ricker testified:

"We used the runway at both ends—we used the Broadway end and the New street end—until we got to the fourth or fifth tier, and then, when we got to the fourth tier, we used our boom derrick, and took things out from the street. Q. You didn't require the runway after that?  A. No. sir;  we hoisted everything.   We took them direct off the trucks.   Q. When did you get up to the fourth or fifth tier?  A. It was in the summer of 1896."

Other testimony is to the same effect.  Longacre testified:

"There was an elevator on the east end of the New street section, which was inclosed with timbers from the bottom to the top, and it was used for hoisting up material.  The engine that ran it just stood inside the building in this opening where we afterwards put in the mullion in front.   That was used for carrying up the masons' materials.   Q. Used by whom?  A. By the masons, plasterers, etc.;  not by us.   Q. How long did it remain there, if you know? A. I cannot tell.   Q. Well, you tell up to any time?  A. Some time in the winter of 1897–1898."

Other testimony shows that this obstruction was not removed until 1898, and that as soon as these obstacles were removed the plaintiff commenced setting the mullion, and finished it in a day or two after the obstacles were cleared away.   It is clear, therefore, that the contention of the defendant in this respect cannot be upheld.   The most that can be said in favor of the argument is that it presented a question of fact, but the testimony was abundant which authorized the jury to find that the contention which the defendant now makes was not supported by the facts as developed upon the trial.   If we are right in our conclusion that the plaintiff could not be charged with any delays except such as arose after the time when he was permitted to set this mullion, it necessarily follows that the verdict of the jury was fairly supported by the testimony, and that the learned court should have directed a verdict in favor of the plaintiff, in accordance with the finding.

A single exception and ruling upon the evidence is called to our attention.   It consisted in the introduction of the timebook kept by the plaintiff and his agents.   In view of the construction which we have placed upon the contract, the introduction of this book in evidence becomes of little importance, for the reason that upon practically undisputed proof, and quite independent of the book, the plaintiff established approximately the date of the final completion of the contract, and such date corresponds with that claimed by the defendant as to when the contract was completed.   If, therefore, the admission of the book was technical error, it is not prejudicial, in the view we have taken of this case; but, in addition to this, we think the ruling which admitted the

book is supported in Mayor, etc., v. Second Ave. R. Co., 102 N. Y. 572, 7 N. E. 905, 55 Am. Rep. 839. Nor was the defendant prejudiced by submitting to the jury the question as to whether the contract was completed in February, 1897, as the jury found that it was not in fact completed until January 17, 1898, which was the date claimed by the defendant.

Upon practically undisputed proof, we think the plaintiff became entitled to a judgment in accordance with the verdict of the jury, and that it was therefore error for the court to set the verdict aside. The order vacating and setting aside the special verdict rendered by the jury should therefore be reversed, and judgment should be directed to be entered upon the verdict in favor of the plaintiff, with interest and costs. All concur.