## CIRCUIT COURT OF BALTIMORE CITY.

Filed May 17, 1913.

BUENA VISTA ICE COMPANY
VS.
MARGARET T. DUFFY.

*William S. Bryan, Jr.,* and *Robert Biggs* for plaintiff.

*J. Cookman Boyd* and *Peter J. Campbell* for defendant.

**DUFFY, J.—**

Sufficient foundation has been laid for the admission of plaintiff's exhibits Nos. 1 and 11 as secondary evidence.

58 Md. 563, Brashers vs. State.

No. 1 alone is inadmissible because the tare weight was called out to the man who made the memorandum by the man on the car, who is not produced as a witness, so that the tare weight is mere hearsay.

102 N. Y. 578, Mayor, &c., vs. Second Avenue Co.

3 Md. 286, Lewis vs. Kramer.

No. 11 is a copy of manifests which are not authenticated by testimony of the person who made the originals, but taken with the testimony of J. J. Doyle that Duffy paid the freight charged on the manifests, it becomes an admission on the part of Duffy as to the weights of ice and the cars as numbered. This fortifies No. 1 and makes it admissible.

Entries on these two exhibits stop on May 22. From that date till October 15th the ice was put on cars at Buena Vista and weighed there by Wastler. He took the tare weight from the stenciled figure on the cars, and this stenciled weight was frequently inaccurate, so that the testimony of Wastler as to weight of ice shipped after May 22d, as recorded by him in the scratch book, Exhibit No. 4, would be insufficient taken alone. But this testimony is fortified by the following facts:

(1) Duffy was satisfied with the weighing of cars that were reweighed by Wastler, and allowance for 52 tons for discrepancy between stenciled weight and actual weight. Record, 217-8.

(2) Wastler, who was shipping the ice, received no complaints from Duffy as to character of shipments. P. 120.

(3) Wastler notified Duffy of shipments as they were made. P. 146.

(4) Duffy went to the meeting at the company's office in Hanover in October and made no complaints. P. 147-8.

(5) Usually about twice a month an account was mailed to Duffy by Kling. P. 232.

(6) Duffy wrote several letters to the company (Exhibit No. 6) and in them made no complaint.

It is therefore admissible.

Testimony on pp. 260-264 is sufficient prima facie proof of the mailing of letters sent to Duffy.

Stephen's Digest of Evidence, 89-93.

Bank vs. Raney, 77 Md. 327.

Telegrams marked "Exhibit No. 5," being instructions to Wastler to ship ice, are admissible because by arrangement between Duffy and Wastler, notice to ship was to be sent in this manner. PP. 119-20.

The contract between the company and Duffy provided for sale of the whole output of the season. In October, after the whole or nearly all of the claim of the company had accrued, Duffy went to Hanover and entered into an agreement with the company by which he was relieved from taking ice remaining in the last three icehouses. This was done without the knowledge or assent of Mrs. Duffy, and inasmuch as she is surety, it is claimed that this releases her. This claim must be overruled.

The general rule is that the liability of the surety is not to be extended by implication beyond the terms of his contract. It is not sufficient that he may sustain no injury by a change of contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract; and if he does not assent to a variation of it and a variation is made, it is fatal.

This statement was made by Justice Story in Miller vs. Stewart, 9 Wheat. 703, and has been adopted in this State in Obendorf vs. Bank, 31 Md. 130; Booth vs. Bank, 116 Md. 672.

But recent decisions hold that where the liability on the bond has accrued as to past fulfillment of the contract, and a variation is made as to future fulfilment by the obligee and the principal to which the surety does not assent, still if the change is such as is beneficial to the surety or if it is self-evident that the change can not prejudice the surety, he will not be discharged.

Pingery Suretyship, Sec. 101.

123 N. Y. Sup. 774, Ulman vs. Hollander.

150 Fed. 30, American Bldg. Co. vs. Co.

The testimony in this case shows that it was self-evident that the relief of Duffy from his contract to take the balance of the ice unshipped at a time when the ice season was over, or nearly so, and when the surety was already liable for the unpaid balance claimed in this suit, was a very material relief to the surety as to which she should not be permitted to object.

Exceptions of complainant, Nos. 1, 2, 3, 4 are sustained. The last is overruled.

All of defendant's exceptions are overruled.

The testimony of the complainant makes out a prima facie case, and there is no defense in the testimony of the defendant. Although William J. Duffy is dead, his son-in-law, Mr. Clark, kept his books and was his general confidant as far as business matters were concerned. Record, p. 300. Mr. Clark was not called as a witness nor was this failure accounted for.

The amount still due to the complainant by William J. Duffy is found to be $3,104.09, from which must be deducted the following items, as the proof does not satisfactorily show that Duffy received the benefit of these.

Amount of ice in cars on Emory Grove Scale Book, but not reported by the tabulation of Doyle, 172 tons ..... $189.20

For variation in weight of cars, 52 T. 17 cwt .......... 58.14

Ice shipped to Lantz Bros., 50 T. 1 cwt ............... 55.05

Ice shipped to Groom, 24 T. 16 cwt. .................... 27.28

Ice shipped to Hesson & Senseny, 47 T. 4 cwt .......... 51.92

$381.59

This leaves the net balance due ..................... $2,722.50

I will sign a decree authorizing a sale of the property for the satisfaction of this claim, unless it is paid within thirty days.