MAGGIE FOX, Respondent, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK and THE CITY OF BROOKLYN, Appellants.

*Negligence — continued use of a railroad structure having a considerable space between the platform and the cars.*

A structure not obviously dangerous, which has been in daily use for years and has uniformly proved adequate, safe and convenient, may be continued in use without the imputation of negligence.

In an action brought to recover damages for a personal injury sustained by a passenger in alighting from a Brooklyn bridge car, by reason of his falling into the space between the car and platform, the plaintiff claimed that the opening was of an improper and dangerous width. The platform was on a curve, and the evidence in reference to the space between it and the cars was conflicting, that on the part of the plaintiff being that it was from eighteen to twenty inches at the ends of the car and from four to seven inches at the center, while the evidence on the part of the defendants was, that the space was eleven and one-half inches at the ends of the car and one inch at the center.

The platform and cars had been in constant use in the same position for many years by thousands of passengers, who had passed over the intervening space without accident, and the arrangement had always, until the plaintiff's injury, been found to be a safe one.

*Held*, that under these circumstances the mere existence of the opening between the platform and cars was not of itself negligence, and that the construction of the platform and cars formed no ground for a recovery.

The application of the rule in reference to the maintenance of a structure which has proved safe and convenient was sought to be overcome by the plaintiff by showing that, upon the elevated railways in New York city, certain means had been resorted to by which the space between the cars and platform was bridged over under certain circumstances, but there was no evidence that any such appliance was in general use.

*Held*, that there being nothing to call the attention of the defendants to the fact that the structure as it stood was insecure or unsafe, there was no duty imposed upon the defendants to adopt the peculiar device which, so far as appeared, was only used by one corporation.

The plaintiff claimed that she was jostled as she was leaving the car, and thus fell into the opening.

*Held*, that this in no way established the existence of negligence on the part of the defendants, in maintaining the cars and platform in the condition which for a large number of years had proved to be a sufficient provision for the safety of passengers.

The accident occurred about half-past six in the afternoon in January, and the plaintiff claimed that the platform was improperly lighted at the time. The evidence on this point was conflicting, that of the plaintiff being that it was so dark that one could not see on getting off the cars, while the evidence on the part of the defendants was that the platform was brilliantly illuminated by. electric lights.

*Held*, that the only evidence in the case upon which a recovery could be had was the evidence tending to show that the platform was not properly lighted.

Appeal by the defendants, the Mayor, Aldermen and Commonalty of the City of New York and the City of Brooklyn, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 22d day of June, 1892, upon the verdict of a jury, rendered at the New York Circuit, and from an order denying the defendants' motion for a new trial made upon the minutes.

The action was brought in November, 1890, against the corporations of the cities of New York and Brooklyn, as the co-joint owners of the Brooklyn bridge and its appurtenances, having control and management, as common carriers, of a cable railroad for the transportation of passengers upon the bridge.

*T. Connoly*, for the appellants.

*J. D. Bell*, for the respondent.

Van Brunt, P. J.:

This action was brought to recover damages for injuries alleged to have been sustained by the plaintiff upon alighting from one of the cars running over the Brooklyn bridge.

It appears from the evidence that the plaintiff was a passenger upon the cars of the bridge upon the 24th of January, 1890, having boarded the cars about half-past six in the afternoon, and as she was about to step off the car on its arrival and stoppage at Brooklyn, she received a shove, and fell into the open space between the car and platform, and was thereby injured.

Evidence tending to show that the platform was improperly lighted, was given upon the part of the plaintiff, and it was also claimed that the opening between the platform of the car and the bridge was of an improper and dangerous width.

It was shown that the bridge opposite to the platform of the car where the car stopped was on a curve and that necessarily the center of the car was much nearer to the platform than the two ends.    It further appears that for a considerable period of time the plaintiff had been accustomed to cross the bridge daily.    But it was claimed by the plaintiff that upon previous occasions she had got off the middle of the car which was necessarily nearer the platform than the end from which she alighted at the time of the happening of the accident in question.    Evidence in reference to the distance from the ends of the car to the platform was conflicting, and also as to the condition of the lights, the testimony upon the part of the plaintiff being that the ends of the car were from eighteen to twenty inches from the platform, and the middle from four to seven inches, whereas upon the part of the defendant the evidence was to the effect that the ends were within eleven and one-half inches of the platform and the center within one inch thereof.    With respect to the lighting also, the evidence of the plaintiff was that it was dark so that you could not see on getting off the cars, and upon the part of the defendant that the platform was brilliantly illuminated by electric lights.    The defendant showed that a large number of persons had both boarded and alighted from the cars under the conditions existing at the time of the happening of the accident, and that no one had ever been injured from a similar cause.

The court thereupon submitted the question of the liability of

the defendant to the jury, who found a verdict in favor of the plaintiff, and denied a motion for a new trial. And from the order and judgment thereupon entered, this appeal is taken.

It has not been considered necessary in the foregoing statement of facts, to enter into an examination of the details of the testimony, but simply to present the salient features which bring up the question which it is considered necessary to review; which is whether there was any evidence upon which negligence could be predicated against the defendants because of the distance between the cars and the platform upon which the passengers alighted.

This question has been considered upon various occasions by the courts; and the rule which has been adduced therefrom is that a machine or structure not obviously dangerous, which has been in daily use for years, and has uniformly proved adequate, safe and convenient, may be continued in use without the imputation of negligence.

Applying this rule to the case at bar it would seem that in view of the large number of persons passing over the Brooklyn bridge upon the cars running thereon, who had alighted from those cars without accident, the mere existence of an opening of the width described by the witnesses, was not of itself negligence. That some opening had to exist is manifest, because the car and the platform could not possibly make a perfectly close connection. The force of this rule was sought to be overcome by showing that upon the elevated railways in this city certain means had been resorted to by which this space was bridged under certain circumstances. But there was no evidence that any such appliance was in general use; and there being nothing to call the attention of the defendants to the fact that the structure as it stood was insecure or unsafe, there was no duty calling upon the defendants to adopt this peculiar device, which, so far as appears, is only used by one corporation.

The principles laid down in the case of *Ryan* v. *Manhattan Ry. Co.* (121 N. Y. 126), seem precisely to cover the questions involved in the case at bar. In that case the ground upon which a recovery was claimed was that the defendant had left an improper and dangerous opening in the pathway of its passengers, without any necessity therefor — the court stating that the question presented was whether the opening into which the plaintiff stepped was or was not wider than

necessary, so much so as to produce danger to the passengers. After alluding to the peculiar conditions attending the case then under discussion, the court said: "Thousands upon thousands of passengers, often in a hurry, and thronging in crowds, had stepped over this opening without harm or danger." And the court asked the question: "How is it possible to say that an opening thus tested by years of use was negligent in its origin or its maintenance? Indeed the plaintiff herself adds to the force of this fact. She had taken the cars at that point a hundred times or more, stepping across the opening without trouble or danger, and gives unconscious testimony to its safety by seeking to show that on this one occasion a change had occurred, and the opening was wider than usual. Her whole case depends upon that allegation, the burden of which rested upon her. She meets it by a guess. In her testimony she estimated by the eye that the width of the opening was fourteen to fifteen inches. She did not notice the opening at all, until, just as she was lifted out of it, and was looking straight at the car and not at the opening, when she stepped in. This was contrary to her habit, and without any apparent reason. No one else stepped into the opening. The other passengers seem to have found no difficulty, and encountered no risk. She alone, paying no attention to her steps, went blindly into the opening. If she had exercised even ordinary care, there is no reason to suppose that her safety would have been endangered."

It is sought by the evidence in the case at bar, to vary it from that of the case cited, by the claim that the plaintiff was jostled as she was leaving the car, and thus fell into the opening. But this in no way makes the act of the defendants negligence, in maintaining the cars and platform in the condition which for a large number of years had been found to be a sufficient provision for the safety of passengers. Thousands had passed over this opening without the slightest inconvenience; and, as every passenger upon alighting from the car is bound to know that some space must exist between the platform and the car, it is their duty to take some precautions in order that they may not step therein.

It would seem, therefore, that the construction of the platform and cars formed no ground for a recovery; and the only evidence upon which a recovery could be had, was that the platform was not

properly lighted, bringing the case within that of *Boyce* v. *Manhattan Ry. Co.* (118 N. Y. 314).

The defendants requested the court to charge that if the jury believed that the platform was lighted on the night of the accident with electric lights, as testified to by defendants' witnesses, the verdict must be for the defendants. The defendants also requested the court to charge that there was no evidence that the space between the platform of the car and the station was unnecessarily wide, and that the only question which the jury might consider was whether it was properly lighted.

It was error for the court to refuse these two requests, as it left the jury to speculate upon the duties of the defendants in regard to the construction and lighting of their platforms, which questions should not have been left to it.

The judgment should be reversed, and a new trial ordered, with costs to appellants to abide event.

FOLLETT and BARRETT, JJ., concurred.

Judgment reversed, and new trial ordered, with costs to appellants to abide event.