JULIA E. ROGERS, Respondent, *v.* THE TRUSTEES OF THE NEW YORK AND BROOKLYN BRIDGE, Appellant.

*Negligence — accident on the Brooklyn bridge — proof of former similar accidents — admissibility of reports made relative to them — knowledge of an agent.*

The trustees of the Brooklyn bridge are bound by the acts of their subordinates to the same extent as any other corporation, and the knowledge of one of their agents, in a matter within the scope of his duty and functions, binds the trustees to the same extent as if the knowledge was their own.

In an action brought to recover damages for personal injuries resulting from an accident happening upon the New York and Brooklyn bridge, it is competent, as against the trustees of that bridge, to prove the happening at the same place of previous accidents, similar in character, although slightly different in detail and cause from the one in question, by entries made by officers connected with the bridge and immediately cognizant of such accidents in a book kept by the captain of the police force of the bridge, and by reports made from such record to the superintendent of the bridge, in conformity with a rule made by such superintendent, which had been in force for several years prior to the accident.

Such evidence is competent, not only upon the theory that the superintendent presumptively had authority to require the making of the record and reports, but also upon the theory that, in view of the length of time the rule had been in vogue and the propriety of it, the trustees had adopted it as their own act.

It is not essential that such records be authenticated by the persons making them; it is sufficient if the handwriting of such persons be identified.

*Quære*, whether such record would be admissible in favor of the trustees, even though properly authenticated by the persons who made it.

APPEAL by the defendant, The Trustees of the New York and Brooklyn Bridge, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 25th day of May, 1896, upon the verdict of a jury rendered after a trial at a Trial Term of the Supreme Court held in and for the county of Kings, and also from an order entered in said clerk's office on the 3d day of June, 1896, denying the defendant's motion for a new trial made upon the minutes.

The action was brought to recover damages for personal injuries to the plaintiff, who, while alighting from the cars operated upon the New York and Brooklyn bridge, on the night of September 4, 1893, stepped into an opening existing between the bridge platform and the cars, and sustained the injuries complained of.

*James C. Bergen,* for the appellant.

*A. H. Dailey,* for the respondent.

HATCH, J. :

Successive litigations involving a consideration of the construction of the Brooklyn bridge at its terminal in the city of Brooklyn, as it existed when the present accident happened and prior thereto, have produced from the courts conclusions which limit the range of discussion. In *Langin* v. *The Trustees of N. Y. & B. Bridge* (10 App. Div. 529) we said, in substance, that negligence could not be predicated upon the construction and maintenance of the bridge as a structure. In that case the trial court limited the jury to a finding of negligence from a consideration of the single question whether sufficient warning was given of the existence of the open space. We held that this question upon the facts was a proper one to be submitted to the jury, and that from such facts they might find negligence. But the court charged as a rule of law that the warning must have been such as to give specific notice to the plaintiff. We held that such rule could not be supported ; that the law was satisfied when the warning was such that in the ordinary course it was likely to reach all the passengers as they alighted from the cars, and upon this ground we reversed the judgment. The question whether negligence could be predicated upon the character of the construction of the bridge was considered in *Fox* v. *Mayor, etc., of New York* (70 Hun, 181), and it was there held that negligence could not be imputed from the character of the structure as it had been maintained and used. As thus limited, the questions presented upon this appeal resolve themselves into a consideration of the means used to make it reasonably safe for passengers to pass from the cars to the platform of the bridge, and rulings made respecting the admission of evidence upon the trial and in the submission of the case to the jury.

The evidence offered by the plaintiff tended to establish that, at the time when she sustained the injuries complained of, the platform of the bridge was not sufficiently lighted to enable her to perceive the open space, and it is fairly to be inferred from the testimony that the space between the car and the platform presented to her vision the appearance of a solid support. Her testimony in this

regard, taken in connection with the testimony of her other witnesses who speak upon this subject, presented a fair question for the jury to consider as to whether at the time when she attempted the passage from the car to the platform the latter was lighted sufficiently to enable her, in the exercise of reasonable care, to discover this open space. This view of the case is fairly supported by the authority of *Boyce* v. *Manhattan Railway Co.* (118 N. Y. 314). The same observations apply with equal force to the question as to whether sufficient and proper care was exercised by the defendant in furnishing assistants and giving warning to passengers when departing from the cars at the place where the accident occurred. The evidence required the submission of this question to the jury within the authority of the *Langin* case. While in some of its features bearing upon the question of knowledge of the locality possessed by the plaintiff the case is not so strong as presented in the *Langin* case, yet the case is not so different from the facts of that case as to require the application of a different rule. The court, in its charge to the jury, submitted the question as to whether the defendant exercised reasonable and proper care over the person of the plaintiff at the time of the accident. The court did not, however, in its general charge assume to define what would be reasonable and proper care or what acts would constitute the reverse of it. But, upon request of the defendant's counsel, the court charged specifically upon these questions, and, as we think, correctly, in view of the proof submitted in support of plaintiff's case.

Upon the trial evidence was permitted to be given of prior accidents occurring at or about the particular place where plaintiff met with the accident. Proof of the happening of such accidents was made in this wise : Plaintiff called the superintendent of the bridge and proved by him that as superintendent he had made a rule directing the captain of the police force connected with the bridge and subject to the superintendent's control to make a record of all accidents of all kinds that occurred on the bridge and enter the same in a book to be kept in his (the captain's) office and to make a report to the superintendent in duplicate the next morning after the accident happened. This system was begun as early as 1886 and was continued down to the happening of the accident. Each morning whenever there had been an accident the superintendent received a copy

of the report, as entered in the book, from the captain of the police. These reports were made and entered in the book by various officers connected with the bridge, who were immediately cognizant of the accident, and each officer signed his name or initials thereto. The handwriting of the report in the book was identified by the superintendent or by the captain of police as being that of an officer on duty upon the bridge and who was charged with the duty of making the entry. These reports at first were evidently written out by the officer making them. Subsequently, and as early as July 1, 1892, they were made upon blanks furnished for the purpose, and were uniform in character and in substantially the following form:

" C. C. MARTIN, *Chief Engineer and Superintendent:*

" DEAR SIR.— The following took place . . . . . . Name of injured . . . . . . Residence . . . . . . Property destroyed . . . . . . Character of accident . . . . . . Cause of it . . . . . . Extent of injuries . . . . . . Damage to property . . . . . . If on roadway, which one . . . . . . If on railroad train give number of car . . . . . . Conductor's name . . . . . . Residence . . . . . . Who witnessed the affair, name, residence and occupation . . . . . . General remarks . . . . . .
                          " (Signed.)          . . . . . . . . . . . ."

These blanks in the reports introduced in evidence were filled up as indicated by the words used, and in each case it was stated therein, under the heading, " Character of the accident," in varying phrase, " Slipping or falling between the car and platform." The reports were, for the most part, signed by James Ward, captain, " per " or " by," usually giving the initials of the person signing. Some were signed by the policeman who made the report or by the conductor of the train. Under the heading of " general remarks " was given a brief account of the circumstances which attended the transaction. Various voluminous and pertinacious objections to the introduction of these reports, or the books containing them, were interposed by the defendant's counsel, beginning with the offer of the first and continuing to the reception of the last. The objections which are now urged as fatal to the ruling of the court which received them are (1) that the testimony was incompetent to establish the fact of the happening of other accidents; (2) that the questions allowed were fatally defective in form; (3) that the memoranda were not sufficiently

authenticated; (4) that the testimony was hearsay.   In disposing of these questions we are to bear in mind that the trustees act in a corporate capacity and under a corporate name; that during the time covered by the reports the condition of the bridge, so far as the character of its construction is concerned, remained unchanged and in practically the same condition.   It was under the management of trustees who acted before, and continued to act after, the right of action against them was by statute transferred from the cities of New York and Brooklyn to the trustees of the bridge.   These trustees acted in the detail of the management of the bridge through a general superintendent and subordinates, and in the relation which they bore to the latter occupied no other or different relation than such as exists between corporations and their servants generally.   These trustees are chargeable in the same degree and to the same extent for the acts of their subordinates as any other corporation would be.   Any act performed by the servant which the law would charge as the act of the corporation is equally chargeable to the trustees, and notice to the servant is notice to the master in the same legal sense as applies to any other corporation.   Measured by this relation, we are to see if these objections can be sustained.   It is a general rule that knowledge of an agent, in a matter within the scope of his duty and function, binds the principal to the same extent as if it were the knowledge of the principal.   (*Holden* v. *N. Y. & Erie Bank*, 72 N.Y. 286.)   The term "general superintendent" implies general powers of management of the business carried on by the principal, and in the furtherance of that business he has power to regulate to some extent, at least, the conduct of his subordinates, and to prescribe rules for their government and as to the manner in which they shall perform their duties and as to what they shall do.   In the present case it is quite evident that the detail of the business and management of the bridge required some rules, and in the absence of any proof limiting the powers of the superintendent, we may assume that he had authority to direct his subordinates and prescribe what they should do, and to this end require that all accidents should be reported.   If he had no such power, we may well assume, in view of the length of time that it had been in vogue and the propriety of it, that the trustees themselves had authorized it and that it became a rule of their own.   This rule,

therefore, which required reports of these accidents, is to be regarded as having been made by the trustees themselves, whether it placed upon the general doctrine that they are chargeable with the act of the superintendent, or that with knowledge they have adopted such act. Having required this report, and it having been made and brought to their attention, they are chargeable with knowledge of its contents, and it becomes evidence against them for any legal purpose, as an admission upon their part of what it contains, and it is also admissible as an admission of the agent acting within the scope of his authority. (1 Morawetz on Corp. § 540a; Id., § 76, p. 78; *Holden* v. *Hoyt*, 134 Mass. 181–184; *Glidden* v. *Town of Unity*, 33 N. H. 571; *Kirkstall Brewery Co.* v. *Furness Ry. Co.*, 9 L. R. [Q. B. Cases] 468.)

The record being admissible, was it competent to establish the fact that other accidents of a similar character had happened at this place? That the entries referred to the place where the present accident happened is without practical dispute; the recital shows that the accidents happened by stepping or falling between the car and the platform. They were, therefore, in their nature similar, varying slightly in detail and cause. We have no doubt that the facts recited show fairly that the accidents were similar in character within the general signification of that term, and were, therefore, competent evidence within the authority of *Brady* v. *M. R. Co.* (127 N. Y. 46).

It is to be borne in mind that this record was kept in all essential respects as a record of the corporation. It may be conceded that such record would not be admissible in its favor, even though properly authenticated by the person who made it. Upon this point, however, we express no opinion. But as an admission against the corporation, when it was shown to have been made by one of defendant's officers, and called to the attention of the superintendent, we think it was sufficiently authenticated, even though the person making the entry was not called to verify it. (*First Nat. Bank of Whitehall* v. *Tisdale*, 84 N. Y. 656; *Root* v. *Great Western Railway Co.*, 65 Barb. 619.)

A very instructive discussion of the question of the admissibility of written memoranda is found in *Mayor* v. *Sec. Ave. R. R. Co.* (102 N. Y. 572). There the memoranda was held admissible in

favor of the party making it, although the person by whom it was made was without personal knowledge of the facts which it contained. The principle announced is applicable in support of the proposition that this record was sufficiently authenticated. We think, therefore, that the objections cannot be allowed to prevail; that the evidence was competent for the purpose offered, and that the record was sufficiently authenticated. The evidence of Carswell was withdrawn from the consideration of the jury by the court, and the jury was directed to disregard it. Assuming that this testimony was improperly received, upon which subject we express no opinion, the manner of its subsequent treatment, and the care taken by the court to expressly call the matter to the jury's attention, both of its own motion and upon request of defendant, we think establishes with reasonable certainty that defendant was not prejudiced thereby and that no error was committed therein. (*Neil* v. *Thorn*, 88 N. Y. 276; *Newman* v. *Ernst*, 10 N. Y. Supp. 310.)

We have examined with care and with such patience as we could command, in view of their number, when few only were necessary to present every question of which the case permits, the exceptions taken upon the trial to the admission of evidence and to the charge of the court.

We find no substantial error, and, therefore, conclude that the judgment should be affirmed, with costs.

All concurred.

Judgment and order unanimously affirmed, with costs.