Pneumatic Signal Company, Appellant, *v.* Texas and Pacific Railway Company, Respondent.

Evidence — action to recover compensation for signal system installed on railroad — erroneous admission of unverified reports of employees of defendant to show intent to reject system as defective.

In an action to recover compensation for the construction and installation of an interlocking signal system upon defendant's railroad, which system the defendant had refused to accept, the defendant was allowed, over objection and exception, to lay before the jury, as evidence upon its intent to reject the interlocking system, a large number of reports from its towermen and reports received by one of its officers made from data claimed to have been furnished by employees, most of which were not verified by the persons who made them, and with no proof from any source that the statements contained in the reports were true or had ever been known to be true by anybody. *Held*, error; that not being evidence of any fact they were not admissible against the plaintiff on the issue of the acceptance of the plant in controversy.

*Pneumatic Signal Co.* v. *Texas & Pacific Ry. Co.*, 159 App. Div. 933, reversed.

(Argued October 15, 1915; decided December 7, 1915.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 11, 1913, affirming a judgment in favor of defendant entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William H. Tompkins* for appellant. The towermen's reports were not proper evidence of the facts they recite. (*People* v. *McLaughlin*, 150 N. Y. 365; *Collins* v. *Carlin*, 106 App. Div. 204; *State Bank* v. *Brown*, 165 N. Y. 216; *C. S. P. Co.* v. *Humbert*, 128 N. Y. Supp. 710; *Sigua Iron Co.* v. *Brown*, 171 N. Y. 438.)

*George S. Cooper* for respondent. The admission of the daily reports of the towermen is not ground for

reversal. (*Donovan* v. *B. & M. R. R. Co.*, 158 Mass. 450; *People* v. *Gonzales*, 35 N. Y. 49, 59; *Vandevoort* v. *Gould*, 36 N. Y. 639; *Brown* v. *Newell*, 132 App. Div. 548; *Cobb* v. *Wells*, 144 N. Y. 77; *Price* v. *Lord Torrington*, 2 Salk. 285; *Doe* v. *Turford*, 3 B. & Ad. 890; *Warren* v. *Greenville*, 2 Str. 1129; *Russell* v. *Boheme*, 2 Str. 1127; *Mellor* v. *Walmsley*, L. R. 2 Ch. Div. [1905] 164; *Fisher* v. *Mayor, etc.*, 67 N. Y. 73; *Livingston* v. *Arnoux*, 56 N. Y. 507; *Leland* v. *Cameron*, 31 N. Y. 115; *Ocean Nat. Bank* v. *Carll*, 55 N. Y. 440.) The court made no error in charging that the reports of the good condition of the apparatus, made by Mr. Ayres, was no evidence of acceptance and waiver of the conditions of the contract. (*Kienle* v. *Gretsch Realty Co.*, 133 App. Div. 389.)

WILLARD BARTLETT, Ch. J.   This action was brought to recover compensation for the construction and installation of an electric interlocking signal system by the railroad of the defendant at Texarkana in the state of Texas. Upon a previous appeal we reversed a judgment in favor of the defendant upon the ground that the verdict had been erroneously directed. (*Pneumatic Signal Co.* v. *Texas & Pacific R. Co.*, 200 N. Y. 125.) Since then the complaint has been amended by the insertion of an allegation that the defendant accepted and used the interlocking plant which is the subject of the controversy. The issue of acceptance raised by this amendment was the principal question litigated upon the second trial which resulted in a verdict in favor of the defendant. The judgment upon that verdict has been unanimously affirmed by the Appellate Division.

Two errors were committed in the reception of evidence which were so serious and prejudicial to the plaintiff that they require a reversal and new trial.

Upon the question of the intent of the defendant to accept the interlocking plant installed upon its road by the plaintiff the defendant was allowed, over objection

and exception, to lay before the jury 967 reports from its towermen. These reports contained statements relating to the working of the interlocking system on the defendant's line. Only 305 of them were verified by the towerman who made them. He testified that he made the reports himself and knew them to be correct at the time. As to the other reports, 662 in number, there was no proof from any source that the statements therein contained were true or had ever been known to be true by anybody. No person who made any of them was called to testify in reference thereto. They were simply proved to be papers received by a division superintendent of the railroad from its employees working on the interlocking system in the Texarkana yard. This was the only manner in which they were authenticated or identified. When they were admitted in evidence the learned trial judge was asked whether they were received as evidence of the facts therein stated. He responded: "Not necessarily; no; I do not think they prove themselves to be absolutely true; they prove what the company was doing and what intentions it had."

It is impossible to appreciate how they prove themselves to be true in any sense. At most they were only evidence of what the signers said they had observed. How these reports tended to show what the intention of the defendant corporation was in respect to accepting or rejecting the interlocking plant furnished by the plaintiff we are unable to perceive. The fact, if it was a fact, that the system worked badly may have a bearing on the *probability* of acceptance; but these reports were not proof of that fact in the absence of testimony showing that the statements therein contained were true. The cases in which reports of multitudinous occurrences have been admitted in evidence are cases in which it has been proved that the facts were truthfully noted down when the events occurred by those having actual knowledge on the subject. Thus in *Mayor, etc., of N. Y.* v. *Second Ave.*

*R. R. Co.* (102 N. Y. 572) the correctness of the entries in the time book was verified by the general foreman who made them as reported to him by the several gang foremen, who in turn testified that they correctly reported to the general foreman the names of the laborers and the time during which they had worked as actually known to them.   More than two-thirds of the reports of the towermen in the present case were wholly without any support of this character.   Not being evidence of any fact they were not admissible against the plaintiff on the issue of the acceptance of the plant in controversy.

With this batch of reports from the towerman there were offered and received in evidence, over objection and exception, in behalf of the defendants 47 monthly reports made by a division superintendent of the defendant's railroad to the railroad commission of Texas on the general condition of the interlocking device installed at Texarkana by the plaintiff.   These reports were made up from data furnished by the reports of the towerman and were equally objectionable.   Three of them characterized the general condition of the device as poor, 27 as fair, and 17 as good; but the learned trial judge charged the jury at the request of the defendant's counsel that the report of the good condition of the apparatus was no evidence of the acceptance and waiver of the contract, to which instruction an exception was duly taken.   This ruling cannot be reconciled with the law of the case as laid down by the court, and was plainly harmful to the defendant.   If, as the court held, the superintendent's reports were to be considered by the jury as evidence of the intention of the company in using and operating the plant the jury should have been allowed to give effect to the reports which imported an intention to accept the apparatus as well as to those which imported an intention to reject it.   The jury were virtually told, however, to regard only the latter.

Even if the admission of the reports is an error, the

learned counsel for the defendant argues that it ought not to be considered a sufficient ground for reversal because it " is unlikely that the jury would be able in the time at their disposal to give much attention to the 900 and more reports," and because every fact which might be learned from the reports which would tend to depreciate the merits of the device in the eyes of the jury was testified to directly by one or more of the defendant's witnesses. It cannot fairly be assumed that the jury did not acquire a substantial knowledge of the contents of the reports. They constituted a voluminous mass of papers which were exhibited in their presence and were the subject of a long colloquy between counsel and the court which the jury must have heard and understood. The trial judge referred to "all this mass of evidence" as having been laid before them to give them light on the question as to whether the defendant did or did not accept the interlocking plant. The phrase quoted evidently referred to the great batch of reports which had been submitted to this court upon the argument of the appeal. It would be contrary to common experience to hold that such documentary evidence added nothing of weight to the oral testimony of a few witnesses who pronounced the interlocking device a failure. We are rather inclined to think that in the view of an intelligent jury who deemed themselves bound to consider it on the question of intent it might have been determinative of the issue.

For these reasons we think the judgment must be reversed and new trial granted, costs to abide event.

Chase, Collin, Cuddeback, Cardozo, Seabury and Pound, JJ., concur.

Judgment reversed, etc.