NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Respondent, *v.* BALDWIN UNIVERSAL CONSOLIDATED COMPANY, Appellant.

First Department, March 4, 1927.

Evidence — competency — action to recover cost of repairs to railroad cars which were damaged while at defendant's warehouse — time cards used by workmen were not competent to establish labor cost — proof as to material used based on testimony by repair clerk was sufficient as to only one car — appeal — although proof was sufficient as to part of one cause of action, Appellate Division cannot award judgment thereon, for judgment appealed from was entire.

This is an action to recover the cost of repairing railroad cars which were damaged by fire while at defendant's warehouse and is based on a contract under which the defendant agreed to return the cars in as good condition as when received,

ordinary wear and tear excepted, or to pay the railroad the cost of replacing or repairing the cars. The evidence offered to show the labor cost of repairing the cars was incompetent. This evidence consisted solely of time cards which the workmen obtained each morning, and which were stamped by a time clock with the date of their arrival on the job, and on which the workmen entered the number of hours put upon any particular job, the card being returned at night at the close of the day's work after they were again stamped by the time clock. Said cards were original memoranda made by third persons concerning matters of which no witness called by the plaintiff had any personal knowledge and upon which no report had been made by any one having such knowledge to any one who was under a duty to make an entry of the same.

The proof as to the value of the material that was used in repairing one of the cars was sufficient. This proof consisted of testimony by a repair clerk whose duty it was to note in his records the material that actually was used in repairing the car. These records were competent evidence, since, while he had no personal recollection of the items that were used in repairing the car, he testified that the entries made by him at the time in the book in question were entries of material actually used in repairing the car. In addition to this testimony there was competent proof by the price clerk as to the reasonable value of the items testified to by the repair clerk.

However, the evidence as to the material that was used in repairing another car was incompetent. The evidence as to the materials that were used in that car consisted merely of the identification of the signature of the repair clerk in the book kept by him. There was no proof that the witness who swore to the clerk's signature ever saw the clerk write in the book or make the entries, and it was not shown that any efforts were made to find the absent clerk or to bring him into court to testify.

Although the first cause of action, so far as it related to the cost of materials used in repairing one of the cars, was sufficiently proven, the Appellate Division cannot award judgment thereon and permit the action to be retried as to the remainder, for the judgment appealed from is an entire one and, therefore, the judgment must be reversed and a new trial granted.

APPEAL by the defendant, Baldwin Universal Consolidated Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 2d day of February, 1925, upon the verdict of a jury rendered by direction of the court pursuant to a stipulation that the case be tried before the court without a jury and that the verdict be directed with the same force and effect as though a jury were present.

*Alfonse F. Spiegel* of counsel [*Ralph J. Leibenderfer*, attorney], for the appellant.

*H. L. Filer* of counsel [*W. L. Barnett*, attorney], for the respondent.

FINCH, J. The question presented by this appeal is whether there is competent and proper proof of the amounts expended by the plaintiff for labor and materials in repairing three damaged freight cars.

The cars were damaged by a fire which occurred in the defend-

ant's warehouse while said cars were on a side track alongside. Said cars were furnished by the plaintiff under an agreement to return the cars " in as good condition as when received, ordinary wear and tear excepted, to or pay the railroad the cost of replacing such cars or putting them in such condition." The damaged cars were repaired by the railroad and this action was brought to recover the cost of such repairs.

Practically the only question litigated upon this appeal is: Did the plaintiff prove its damage by competent and proper proof? For the purpose of proving the cost of the labor expended upon the cars, the plaintiff offered in evidence time cards taken from its files. The plaintiff by its shop foreman and shop accountant testified that these cards were obtained by the workmen in the morning, with the date of their arrival stamped thereon apparently by a time clock. The men would thereafter fill in on the cards the number of hours put in upon any particular job, and when they quit, the cards would be stamped again by the time clock and dropped by the laborers in the drop box of a particular clerk who made up records from them the next day. The next morning after inspection by a foreman or assistant foreman, the amount of time as shown by the cards would then be apportioned or distributed in the accounting office on so-called distribution sheets for the purpose of the Interstate Commerce Commission classifications, and bills and valuations. In that connection the shop accountant testified: " We balance them up with the pay-roll; the money we spend we balance up. We know what our expenses were on the pay-roll, and then we balance them with our distribution — what we pay out, and then we make up our bills accordingly." The entry on the time cards by the workman was done under an order number identifying the particular car. In this connection said witness further testified that an order book was kept from which orders having designated numbers were issued to repair certain cars. The stubs in the order book indicated the car numbers on which orders for repairs were issued.

Upon the foregoing proof only did the plaintiff rely to establish the cost of labor charged against the defendant for repairing the three damaged cars. As to the materials furnished the shop foreman who had charge of the men " with a force of supervisors under me," thus indicating that he was a general foreman and not a gang foreman, testified that an American Railway Association clerk goes to the car and jots down the items of repair on forms which he turns in to the general offices at the Readville shop. The practice was to have the foreman issue an order for certain supplies from the stores department and these were handed out

upon a receipt by a repair clerk, or, if the needed supplies were not on hand, they were ordered by the stores department. As to the materials used in repairing car WP 18213, a repair clerk testified regarding entries made by him at the time in a book used for that purpose; of the materials which went into this car, he had no recollection independent of those entries. He also identified the signature of another repair clerk in a similar book showing the materials which went into another of the cars. The witness, however, never saw the absent repair clerk write in the book or make those entries. It was not shown that any efforts were made to find the absent clerk or bring him to court. The plaintiff then introduced the testimony of a price clerk at the Readville shops as to the reasonable value of the items of materials supplied.

Taking up first the proof as to the labor costs, it is to be noted that the plaintiff offered no testimony of any witness who observed the men and who could testify from recollection or, although he had no present recollection, could still testify that he made entries at that time as to what he observed and that they were then correct. Nor did the plaintiff offer the testimony of any witness who in the regular course of business and in accordance with his duty made entries based upon information furnished by any observer. The time cards offered in evidence were, therefore, original memoranda made by third parties to the litigation concerning matters of which no witness called by the plaintiff had had any personal knowledge, and upon which no report had been made by any one having such knowledge to any one who was under a duty to make an entry of the same. In *Mayor, etc., of N. Y.* v. *Second Ave. R. R. Co.* (102 N. Y. 572) it was held that where a gang foreman who had had personal knowledge at the time was called as a witness and testified that he had given the information to a general foreman, who also testified that he had at the time correctly entered the information received and identified the entries, the book containing the entries could be introduced in evidence although neither witness had any recollection independently of the entries. The court by ANDREWS, J., said: " The ultimate fact sought to be proved on this branch of the case, was the number of days' labor performed in making the repairs. The time-book was not admissible as a memorandum of facts known to Wilt and verified by him. His observation of the men at work was casual, and it cannot be inferred that he had personal knowledge of the amount of labor performed. His knowledge, from personal observation, was manifestly incomplete, and the time-book was made up, mainly, at least, from the reports of the gang foreman. The time-book was clearly not admissible upon the testimony either of the

582   N. Y., N. H. & H. R. R. Co. *v.* Baldwin Universal C. Co.

First Department, March, 1927.                    [Vol. 219

gang foremen, or of Wilt, separately considered.   The gang foremen knew the facts they reported to Wilt, to be true, but they did not see the entries made, and could not verify their correctness.   Wilt did not make the entries upon his own knowledge of the facts, but from the reports of the gang foremen.   Standing upon his testimony alone, the entries were mere hearsay.   But combining the testimony of Wilt and the gang foremen, there was, first, original evidence that laborers were employed, and that their time was correctly reported by persons who had personal knowledge of the facts, and that their reports were made in the ordinary course of business, and in accordance with the duty of the persons making them, and in point of time were contemporaneous with the transactions, to which the reports related, and second, evidence by the person who received the reports, that he correctly entered them as reported, in the time-book, in the usual course of his business and duty.''

In *Pneumatic Signal Co.* v. *Texas & P. R. Co.* (216 N. Y. 374, 376), in speaking of *Mayor, etc., of N. Y.* v. *Second Ave. R. R. Co.* (*supra*), Willard Bartlett, Ch. J., said: '' The cases in which reports of multitudinous occurrences have been admitted in evidence are cases in which it has been proved that the facts were truthfully noted down when the events occurred by those having actual knowledge on the subject.   Thus in *Mayor, etc., of N. Y.* v. *Second Ave. R. R. Co.* (102 N. Y. 572) the correctness of the entries in the time book was verified by the general foreman who made them as reported to him by the several gang foremen, who in turn testified that they correctly reported to the general foreman the names of the laborers and the time during which they had worked as actually known to them.''

Several of the States of the United States and many of the well-known text book writers have advocated a more liberal rule as better suited to the larger business of the present day.   (Wig. Ev. [2d ed.] § 1530; Chamberlayne Mod. Ev. § 2886; *Delaney* v. *Framingham Gas, Fuel & Power Co.*, 202 Mass. 359; *Chisholm* v. *Beaman Machine Co.*, 160 Ill. 101; *Wells Whip Co.* v. *Tanners M. F. Ins. Co.*, 209 Penn. St. 488.)   Judge Hough sitting in Admiralty felt free to adopt a more liberal rule than that which exists at common law.   In *The Spica* (289 Fed. 436, 443) he said: '' Thus we accept it as a rule, flexible in the reasonable discretion of the court that sees the men concerned in the business and hears evidence as to the necessities of the situation, that no objection, based on the exclusion of hearsay, exists to the admission of an entry made by one person in the regular course of business, recording an oral or written report, made to him by one or more other persons in

like regular course, of a transaction lying in the personal knowledge of the latter, if necessity and trustworthiness as above outlined be shown to exist. Section 1530. [Wigmore on Evidence.]

" The object always is to get as near to original cross-examinable statements as is reasonably possible under the circumstances; therefore what is called the ' original entry ' is always insisted on, if possible, and the original entrant must be produced, if also possible. Section 1532. How far an entry, certainly not original, may be received is matter of degree. Discretion here properly has large play. * * * Apply this procedure to the matter in hand. That necessity existed for offering entries rather than the workmen who signed cards may be assumed rather than found. There is small evidence, though we have no doubt of the fact. But there is no evidence at all as to why the foremen who requisitioned the material were not produced, if the requisitions are the original entries. Still less is there any evidence as to why the clerks who allocated items to the Spica's charge sheets and made the entries thereon were not called."

It will be noted that in the case at bar the evidence offered by the plaintiff did not even comply with the more liberal rule advocated as above.

The claim for labor and materials for three of the cars comprised the first cause of action. The second cause of action concerning the fourth car was dismissed at the trial and no appeal was taken by the plaintiff from that ruling. Although such portion of the first cause of action as is represented by the materials used in repairing car WP 18213 were proven, this court may not award judgment thereon and permit the action to be retried as to the remainder, since the judgment appealed from is an entire one. As was said by Judge Vann in *City of Buffalo* v. *D., L. & W. R. R. Co.* (176 N. Y. 308, 312): " If the judgment is entire, even if it might have been otherwise, it cannot be so severed on the decision of an appeal as to grant a new trial of part of the issue only without confusion and danger."

The judgment appealed from should, therefore, be reversed and a new trial ordered, with costs to appellant to abide the event.

Dowling, P. J., Merrell and McAvoy, JJ., concur.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event.